IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LYNNETT MYERS, *et al.*, | : | |
| | : | Case No. 2:15-CV-2956 |
| **Plaintiffs,** | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Kemp |
| MARIETTA MEMORIAL | : | |
| HOSPITAL, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter is before the Court on Plaintiffs' Motion for Conditional Collective Action Certification, Expedited Discovery, and Issuance of Notice (Doc. 6); Motion for Reconsideration of the Magistrate Judge's Order denying granting Defendants' motion to compel discovery (Doc. 36); and Motion to Stay Pending Resolution of the Motion for Reconsideration (Doc. 37). For the following reasons, the Court **GRANTS** Plaintiffs' Motion for Conditional Collective Action Certification under the Fair Labor Standards Act ("FLSA"); **DENIES as MOOT** Plaintiffs' Motion for Reconsideration; and **DENIES as MOOT** Plaintiffs' Motion to Stay.

I. BACKGROUND

A. Factual Background

Plaintiffs Lynnett Myers, Carol Butler, and Arva Lowther are former nurses at Defendant Marietta Memorial Hospital, which is operated by Memorial Health System. (Am. Compl., Doc. 33 at ¶¶ 6-8, 14.) Memorial Health System also operates Defendants Selby General Hospital and Marietta Health Care, Inc., and all of these entities function as joint employers of Memorial Health System's employees and operate as a single integrated system. (*Id.* at ¶ 14.) Plaintiffs allege that Defendants' policy of automatically deducting thirty minutes for a meal break for

1

employees who do direct patient care violates the FLSA because employees are routinely prohibited from either taking an uninterrupted meal break or canceling the automatic deduction. (Doc. 6 at 6.)  Plaintiffs ask the Court to certify conditionally the following class:

> All of Defendants' current and former hourly employees who were responsible for direct patient care and were subject to Defendants' automatic meal deduction policy during the three years before this Complaint was filed up to the present.

(Doc. 6 at 4-5.)

> Defendants' personnel policy specifies the following:
>
> 1.2.1 It is the general policy that employees are scheduled a 30 minute lunch break.
>
> > 1.2.1.1 Employees who are unable to take an uninterrupted lunch break due to work load will be paid for that time. . . .
>
> 1.2.3 Employees must have prior approval from Manager before working overtime or working their lunch break.

(Memorial Health System Personnel Policy, Doc. 7-5.)  The policy further provides:

> 5.0 Instructions – Lunch Periods
>
> > 5.1 Scheduling of lunch periods is the responsibility of the Manager.  A normal lunch period is 30 minutes.
> >
> > 5.2 The cafeteria is provided for employees to bring their lunch, as well as those who purchase it.
> >
> > 5.3 Employees are not permitted to eat in patient or public areas of the hospital.
> >
> > 5.4 Employees are not permitted to work their lunch period without permission of their Department Manager or Supervisor.
> >
> > > 5.4.1 Employees who are unable to take an uninterrupted lunch break due to work load will be instructed to cancel their lunch deduction by their supervisor or may be released from work 30 minutes early.

(Memorial Health System Personnel Policy, Doc. 7-4 at 4.)

The three Plaintiffs have submitted virtually identical affidavits attesting that patient care employees did not clock in and out for meal breaks and that the hospital had a policy of

automatically deducting thirty minutes from each shift for a meal period regardless of whether the employees actually took a break. (Affidavit of Lynnett Myers, Doc. 7-1 at ¶ 6; Affidavit of Carol Butler, Doc. 7-2 at ¶ 6; Affidavit of Arva Lowther, Doc. 7-3 at ¶ 6.) All three women stated that they worked as nurses, each in multiple departments, for various time periods between 2004 and 2015. (Doc. 7-1 at ¶ 2; Doc. 7-2 at ¶ 2; Doc. 7-3 at ¶ 2.) They were paid hourly and often worked more than forty hours in a week. (Doc. 7-1 at ¶¶ 3, 5; Doc. 7-2 at ¶¶ 3, 5; Doc. 7-3 at ¶¶ 3, 5.) Each of them stated: "I do not recall a single day in the last three years when I was able to take a full 30-minute meal break free from all my job duties." (Doc. 7-1 at ¶ 8; Doc. 7-2 at ¶ 8; Doc. 7-3 at ¶ 8.) They were never scheduled for a 30-minute uninterrupted meal break and their attempted breaks were regularly interrupted. (Doc. 7-1 at ¶ 9; Doc. 7-2 at ¶ 9; Doc. 7-3 at ¶ 9.) Finally, they stated that the automatic meal break deduction policy applies to "all employees responsible for direct patient care at Memorial Health System." (Doc. 7-1 at ¶ 7; Doc. 7-2 at ¶ 7; Doc. 7-3 at ¶ 7.) They further averred that "[o]ther employees responsible for direct patient care are also interrupted or miss meal breaks, but are subject to the automatic deduction." (Doc. 7-1 at ¶ 7; Doc. 7-2 at ¶ 7; Doc. 7-3 at ¶ 7.) They also stated that they were reprimanded when they attempted to cancel the automatic lunch deductions due to a missed break, and that they were discouraged from leaving the floor during any scheduled meal break. (Doc. 7-1 at ¶¶ 7-8; Doc. 7-2 at ¶¶ 7-8; Doc. 7-3 at ¶¶ 7-8.) Finally, they stated that "[m]anagers were aware that nurses were required to work or were interrupted during their meal breaks, and they did not ensure that . . . nurses were completely relieved of their work duties during their uncompensated 'meal periods.'" (Doc. 7-1 at ¶ 12; Doc. 7-2 at ¶ 12; Doc. 7-3 at ¶ 12.)

3

The hospital has submitted affidavits from 29 employees who work in direct patient care. (Doc. 17-2.) The affidavits, which are identical, each contain the affiant's name, job title, and dates of employment, as well as the following:

> 3. I have been informed that there is a lawsuit pending about allegations of Hospital employees required to work without compensation. I understand that I may be eligible to participate in this lawsuit and may, if such claims are proven, be entitled to monetary compensation. Notwithstanding, I make this declaration on a voluntary basis.
>
> 4. For my entire tenure as a Hospital employee, I have been properly paid for every day that I have worked. I have never performed work for which I have not been compensated.
>
> 5. I am unaware of any co-workers performing work for which they have not been compensated.

(*Id.*) Additionally, some, but not all, of the affidavits include the following statement:

> 6. Regarding meal breaks, I understand that if my meal break is interrupted for work I may either inform my supervisor or manually remove the break, so that I am paid for the entire break period, which is what I have done if my meal break was interrupted.

(*Id.*)

### B. Procedural History

Plaintiffs commenced this collective and class action against Defendants Marietta Memorial Hospital, Marietta Health Care, Inc., and Selby General Hospital on October 29, 2015. (Doc. 1.) They have brought causes of action under the FLSA as well as the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Rev. Code § 4111.01, *et seq*.[1] On January 7, 2016, Plaintiffs moved for conditional collective action certification and also asked for expedited discovery and issuance of notice to the proposed class. (Doc. 6.) Defendants opposed certification. (Doc. 17.) On March 10, 2016, Defendants noticed the depositions of Plaintiffs Myers, Butler, and Lowther as well as Opt-in Plaintiff Stacy Hanlon, and on March 17, 2016,

---

[1] Although Plaintiffs seek class certification under Federal Rule of Civil Procedure 23 for the OMFWSA claims, there is no motion for class certification before the Court at this time.

Plaintiffs filed a motion requesting expedited certification and a protective order to prohibit the depositions. (Doc. 21 at 3; Doc. 20.) The following week, Defendants filed a motion to compel the depositions. (Doc. 21.)

The Magistrate Judge granted the motion to compel in part and denied Plaintiffs' motion to expedite. (Doc. 35.) Acknowledging that there was no need for discovery on the conditional-certification issue and that taking depositions of Plaintiffs at this point in the litigation was inconsistent with the Court's typical procedure in a FLSA collective action, the Magistrate Judge nevertheless granted the motion to compel Plaintiffs' depositions because Plaintiffs had not argued that they would be prejudiced or that the proposed depositions were improper under Federal Rules of Civil Procedure 26(b), 26(c), or 30. (*Id.* at 4-5, 7-8.) The Magistrate Judge noted that the Court's decision was confined to the facts before it and was not intended to endorse a departure from the normal procedure for FLSA cases in this Court. (*Id.* at 8-9.) The Magistrate Judge also explicitly rejected Defendants' argument that Plaintiffs should be required to meet the higher standard for certification that applies in Rule 23 class actions. (*Id.* at 6-7.)

Plaintiffs moved for reconsideration of the Magistrate Judge's order denying the motion to expedite and granting the motion to compel (Doc. 36) and also asked the Court to stay the depositions of Plaintiffs pending the resolution of the motion for reconsideration. (Doc. 37.) Defendants opposed both requests. (Doc. 39.)

## II. MOTION FOR CONDITIONAL CLASS CERTIFICATION

### A. Legal Standard

The Fair Labor Standards Act requires employers to pay their employees "at a rate not less than one and one-half times the regular rate" for work exceeding forty hours per week. 29 U.S.C. § 207(a)(1). Congress's primary purpose in enacting the FLSA "was to aid the

5

unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945)). The FLSA "was enacted by Congress to be a broadly remedial and humanitarian statute," *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 143 (6th Cir. 1977), and in interpreting the FLSA the Supreme Court has long noted that the statute attempted to mitigate the effects of the "unequal bargaining power . . . between employer and employee," *Brooklyn Sav. Bank*, 324 U.S. at 706. Due to the "remedial nature of this statute," the employee's burden "of proving that he performed work for which he was not properly compensated" should not be made "an impossible hurdle for the employee." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds as recognized in Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 516-17 (2014).

The FLSA provides that a court may certify a collective action brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Similarly situated employees are permitted to "opt into" the collective action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The lead plaintiffs bear the burden to show that the proposed class members are similarly situated to the lead plaintiff. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). The FLSA does not define "similarly situated" and neither has the Sixth Circuit. *Id.* But notably, plaintiffs seeking to certify a collective action under the FLSA face a lower burden than plaintiffs seeking class certification under Federal Rule of Civil Procedure 23. *Id.* District courts conduct a two-phase inquiry to determine whether plaintiffs are similarly situated:

6

conditional and final certification. *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012).

In the first phase, the conditional-certification phase, conducted at the beginning of the discovery process, named plaintiffs need only make a "modest factual showing" that they are similarly situated to proposed class members. *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015) (quoting *Comer*, 454 F.3d at 547). The standard at the first step is "fairly lenient . . . and typically results in 'conditional certification' of a representative class." *Comer*, 454 F.3d at 547 (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)). Courts generally consider factors such as "employment settings, individual defenses, and the fairness and procedural impact of certification." *Frye*, 495 F. App'x at 672 (citing *O'Brien*, 575 F.3d at 584). Plaintiffs are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. Showing a "unified policy" of violations is not required. *Id.* at 584. The named plaintiff "need only show that [her] position is similar, not identical, to the positions held by the putative class members." *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867-68 (S.D. Ohio 2011) (alteration omitted); *see also Comer*, 454 F.3d at 546-57.

At this stage, a court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Waggoner*, 110 F. Supp. 3d at 765 (citing *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011)). In determining conditional certification, courts have considered " whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread . . . plan was submitted." *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 486 (S.D. Ohio 2014) (quoting *H & R*

*Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999)). If conditional certification is granted, "plaintiffs are permitted to solicit opt-in notices, under court supervision, from current and former employees." *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-CV-27, 2015 WL 6662919, at *1 (S.D. Ohio Nov. 2, 2015).

At the second stage, the final certification phase, conducted after the conclusion of discovery, courts "examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547. At this stage, the court has much more information on which to base its decision of whether the proposed plaintiffs are similarly situated and, "as a result, it employs a stricter standard." *Id.* (alteration, quotation marks, and citation omitted).

## B.  Analysis

Plaintiffs contend that employees who perform direct patient care at Memorial Health System are similarly situated because they are hourly employees who have been denied overtime pay due to Defendants' automatic meal break deduction policy and Defendants' practice of not allowing employees to take a 30-minute uninterrupted meal break or receive pay for the time worked during the break. They cite a number of cases from other district courts that have conditionally certified similar classes with FLSA overtime claims based on meal-break deductions for time during which the plaintiffs actually worked. (Doc. 6 at 13-15.) Defendants counter that Plaintiffs have presented only speculative and conclusory statements regarding whether employees are similarly situated, have failed to define the proposed class with the requisite specificity, and have offered an insufficient number of affidavits from employees to meet make the "modest factual showing" required at the conditional-certification stage,

8

particularly in light of the affidavits of other employees submitted by Defendants. (Doc. 17 at 7-12.)

Turning first to the question of the affidavits, Plaintiffs argue that because the only issue before the Court is whether the lead plaintiffs are similarly situated to the proposed class, the Court should not consider the affidavits submitted by Defendants. A consideration of Defendants' affidavits, they contend, would constitute a premature examination of the merits of the FLSA claims.[2] Although the Sixth Circuit has not weighed in on this issue, the Court agrees with the reasoning of other district courts that have declined to rely on these types of declarations collected by employers at the conditional-certification stage. *See Heitzenrater v. OfficeMax, Inc.*, No. 12-cv-900S, 2014 WL 448502, at *4 (W.D.N.Y. Feb. 4, 2014) ("[C]ourts in this Circuit regularly refuse to rely on such [opposing] declarations when plaintiffs have not yet had an opportunity to depose the declarants."); *Acevedo v. Workfit Medical LLC*, No. 14-cv-6221, 2014 WL 4659366, at *7 (W.D.N.Y. Sept. 17, 2014) (rejecting defendants' competing declarations as irrelevant at the conditional certification stage because "Defendant cannot defeat Plaintiffs'

---

[2] Plaintiffs also assert that several of the declarations are defective and should not be credited by the Court in any event. For instance, Plaintiffs assert that ten employees who signed the affidavits work in the emergency department, which both parties agree is not subject to the automatic meal break deduction. Therefore, Plaintiffs contend that these affidavits are of no evidentiary value. Further, Plaintiffs assert that the Court should disregard three additional affidavits that were not notarized. (*See* Docs. 29-13, 29-14, 29-44.) Courts may consider "unsworn declarations under penalty of perjury" to support any matter that legally requires an affidavit to support it. 28 U.S.C. § 1746. *See also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002) ("Courts are generally consistent in validating documents that were sworn to under penalty of perjury, notwithstanding the fact that they were not notarized."). The Court therefore finds that these three affidavits need not be disregarded merely on the ground that they were not notarized. And although the Court would likely disregard affidavits from emergency department employees since they are not subject to the automatic deduction, on the face of the affidavits there is no indication that these ten employees are in fact employed in the emergency department, nor is there any other evidence before the Court at this time to so indicate. Therefore, the Court declines to disregard any of the affidavits on these grounds.

conditional certification motion by appealing to credibility issues or factual disputes"); *Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 180 (D. Conn. 2010).

At this early stage of the litigation, Plaintiffs have not had an opportunity to depose the employees who submitted affidavits on Defendants' behalf. And a balancing of Plaintiffs' and Defendants' competing affidavits would require credibility and factual determinations and is thus improper at this time. Moreover, form affidavits "gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion." *Amador v. Morgan Stanley & Co.*, No. 11-cv-4326, 2013 WL 494020, at *4 (S.D.N.Y. Feb. 7, 2013). *See also Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011) ("Lastly, this Court is not swayed by [the defendant's] submission of thirty-five 'happy camper' affidavits from employees. . . . The affidavits, all using substantially the same language, each state that the employee never had an issue with missing a meal or, in the event the employee did miss a meal break, the employee was able to fill out a payroll adjustment form to indicate they missed their break and were properly paid."); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1060 (N.D. Cal. 2007). Moreover, Defendants acknowledged at oral argument that some of the employees whom Defendants' counsel asked to sign the affidavits refused to do so, and these employees have not been identified to the Court or, presumably, to Plaintiffs' counsel. The Court agrees with Plaintiffs that the affidavits submitted by Defendants are of little evidentiary value at the conditional-certification stage.

As for Plaintiffs' affidavits, there is no threshold requirement for a certain number of affidavits from employees to certify conditionally a collective action. At oral argument, Defendants urged the Court to adopt such a requirement based on the percentage of the class for

which the lead plaintiffs submit affidavits attesting to a common plan or practice. They rely heavily on Judge King's recommendation to deny collective-action certification in *Rutledge v. Claypool Elec., Inc.*, in which the court found that affidavits from two plaintiffs that they and four to five unidentified coworkers did not receive overtime did not constitute a "widespread discriminatory plan" because "uncontroverted evidence establishes that seven employees represents, at most, approximately five percent of at least 140 electricians employed by defendants." No. 2:12-cv-159, 2012 WL 6593936, at *13 (S.D. Ohio Dec. 17, 2012), *report and recommendation adopted by* No. 2:12-cv-159, 2013 WL 435058 (S.D. Ohio Feb. 5, 2013). The facts of *Rutledge* differ significantly from those before this Court because unlike a large singular worksite like a hospital, there the plaintiffs worked at forty different worksites under between eight and eleven project managers and the plaintiffs offered affidavits only from employees working under one manager at two sites. *Id.* Indeed, in at least one instance a court in this district has certified a class based on only two declarations. *Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2011 WL 6149842, at *4 (S.D. Ohio Dec. 9, 2011) (Rice, J.). *See also Flexter v. Action Temp. Servs.*, No. 2:15-cv-754, slip op. at 9 (S.D. Ohio Mar. 25, 2016) (Smith, J.) (denying a conditional-certification notion but noting that "[i]n some instances, two declarations may be sufficient to show that other employees are similarly situated to the plaintiff and FLSA conditional certification is appropriate" and that "[o]ne such instance might arise where a declarant has personal knowledge of widespread violations").

The Court is not persuaded that a bright-line percentage requirement is appropriate at the conditional-certification stage.[3] Such a requirement would, in fact, contravene the purpose of the FLSA. The Sixth Circuit has prescribed the first phase of the two-phase certification inquiry to

---

[3] Defendants did not articulate the precise percentage of class members they believe would be an appropriate showing.

11

take place "at the *beginning* of discovery." *Comer*, 454 F.3d at 546 (emphasis added); *see also O'Brien*, 575 F.3d at 583 (noting that "[a]fter the initial conditional certification of the class, the parties *entered into* discovery" (emphasis added)). This is a critical point—Defendants make much of the fact that Plaintiffs could conduct discovery to gain further information from other employees, including the employees from whom Defendants collected affidavits. But the conditional-certification framework contemplates that such discovery will be conducted after the first phase—conditional certification—and before the second phase—final certification or decertification. Defendants' arguments that they lack a remedy to contest Plaintiffs' modest factual showing is thus inapposite. Their remedy is obvious: to move to decertify the class after the completion of discovery. *See Comer*, 454 F.3d at 547. Indeed, courts have emphasized that at the second stage, "[p]laintiffs generally must produce 'more than just allegations and affidavits' demonstrating similarity in order to achieve final certification." *Frye*, 495 F. App'x at 671 (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)). The Court declines to follow Defendants' request to import this stricter standard into the first phase, where it could in many instances, particularly in workplaces with large numbers of employees or an employer who uses coercion to dissuade employees from participating in a FLSA lawsuit, lead to the unintended and unjust result of making the burden of proof "an impossible hurdle for the employee." *Anderson*, 328 U.S. at 687.

     Defendants next take issue with what they term the "speculative" statements in Plaintiffs' affidavits, which they contend contain only conclusory assertions that cannot show that employees are discouraged from taking their meal breaks. (Doc. 17 at 7.) In particular, they fault Plaintiffs' failure to identify any individual supervisors who reprimanded them or discouraged them from taking meal breaks. (*Id.* at 8.) Relatedly, they contend that Plaintiffs

12

have not shown any foundation for their knowledge that other direct patient care employees who were subject to the automatic deduction were prevented from taking meal breaks.  (*Id.*) Therefore, they contend, the Court cannot rely on this information in ruling on the conditional-certification motion because it would be inadmissible at trial as hearsay.

Preliminarily, the Court notes that some courts have found it appropriate to consider even inadmissible evidence in ruling on a motion for conditional certification in a collective action proceeding, particularly when no discovery has taken place.  *See O'Neal v. Emery Federal Credit Union*, No. 1:13-cv-22, 2013 WL 4013167, at *7 (S.D. Ohio Aug. 6, 2013); *Carter v. Indiana State Fair Comm'n*, No. 1:11-cv-852, 2012 WL 4481350, at *3 (S.D. Ind. July 17, 2012); *Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 246-47 (W.D. Mich. 2011).  The court in *O'Neal* noted that this approach is particularly reasonable when Plaintiffs' counsel lacks "access to contact information for other potential plaintiffs from whom to solicit statements."  2013 WL 4013167, at *7 (citing *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 870 (S.D. Ohio 2005) (striking hearsay statements from plaintiff's affidavit when plaintiff had access to contact information for 300 potential class members and discovery had already taken place)).

Nevertheless, even if the Court were to find that it was not appropriate to consider inadmissible evidence in deciding a motion for conditional certification, the Court finds that many of the relevant statements in Plaintiffs' affidavits are based on their personal knowledge and are thus admissible under Federal Rule of Civil Procedure 602.  *See* Fed. R. Civ. P. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  Many courts have held that employee statements regarding their employer's policies and practices and hours worked by other employees were admissible evidence based on the employee's personal knowledge.  *See, e.g.*,

13

*Carter v. Jackson-Madison Cnty. Hosp.*, No. 1:10-cv-1155, 2011 WL 1256625, at *17 (W.D. Tenn. Mar. 31, 2011); *Noble v. Serco, Inc.*, No. 3:08-76-DCR, 2009 WL 3154252, at *3 (E.D. Ky. Sept. 28, 2009) (holding that where affiants stated that they "got to know several other" employees working in the same capacity, it was reasonable to infer that the affiants would have talked to their coworkers about their pay and hours worked and thus had personal knowledge on the subject); *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 369 (E.D. Tenn. 2006) ("[A]s employees of [defendant], [plaintiffs] would have learned during the normal course of their employment how the company operates and what the company's policies were.").

Defendants rely on a case from the Eastern District of Michigan where a court declined to certify a nationwide class due to the plaintiffs' lack of personal knowledge evidenced in the following affidavit: "It is my personal knowledge that [Defendant's] . . . policy of misclassification was intentionally and uniformly enforced against all low-level 'supervisors' at my location, *which I . . . understood was the same company-wide*." *Bacon v. Eaton Aeroquip, L.L.C.*, No. 11-14103, 2012 WL 4321712, at *2 (E.D. Mich. Sept. 20, 2012) (emphasis original). The court determined that the plaintiffs, as employees at one facility, lacked personal knowledge to support this assertion as to all of the employer's facilities nationwide. Here the circumstances are different, because Plaintiffs articulate their knowledge of violations only at their own hospital. Other cases cited by Defendants suffer from the same flaw. For instance, in *Colson v. Avnet, Inc.*, a court declined to certify a collective action where the case appeared to be "a[n] uncomplicated lawsuit by a single employee against her former employer for alleged violations of federal overtime laws stemming from her individual experiences in one office" out of more than 40 offices nationwide for which the plaintiff sought certification. 687 F. Supp. 2d 914, 930 (D. Ariz. 2010). The court specifically noted that "to the extent [the plaintiff, who worked only

14

in the defendant's Oregon office] has provided information relating to Defendant's employment practices with [proposed class members] outside the State of Oregon, it is based on nothing more than her opinions, which are vague." *Id.* at 928. *See also Arrington v. Mich. Bell Tel. Co.*, No. 10-10975, 2011 WL 3319691, at *6 (W.D. Mich. Aug. 1, 2011) (denying a motion to certify a *statewide* collective action of managers employed at various worksites).

Although the three Plaintiffs' affidavits here are not detailed as to who reprimanded them for attempting to cancel the automatic deductions when they did not receive a meal break, it is reasonable to infer that in the course of their daily work Plaintiffs would have personal knowledge about whether other employees clocked in and clocked out for lunch breaks or were regularly unable to take a lunch break. *See Noble v*, 2009 WL 3154252, at *3. Moreover, "while the allegations in the declarations are not highly specific, it is not necessary for the declarants to provide such details as the dates and times they worked overtime hours for which they were not compensated." *Id.* Indeed, Plaintiffs state that other direct patient care workers were constantly attending to patients and did not have time to take breaks, an observation that another patient care worker could certainly make from personal knowledge. (Doc. 7-1 at ¶ 13; Doc. 7-2 at ¶ 13; Doc. 7-3 at ¶ 13.) They also attested that there was a "standing practice" for direct patient care employees to be "on duty during their entire shift" rather than being relieved to take a lunch break. (Doc. 7-1 at ¶ 8; Doc. 7-2 at ¶ 8; Doc. 7-3 at ¶ 8.) Again, this is a practice of which individual employees could very well be aware through personal knowledge. The Court finds that Plaintiffs' affidavits show sufficient personal knowledge of a policy and practice of Defendants that affects proposed class members in a similar, if not identical, manner. *See Lewis*, 789 F. Supp. 2d at 867-68.

Defendants' final argument concerns the proposed class definition. Defendants contend that Plaintiffs have not adequately defined the class because "direct patient care" providers is a vague and unspecific title. (Doc. 17 at 11.) Moreover, they argue, direct patient care providers, which the hospital defines as including "registered nurses, patient care technicians, care coordinators, emergency department technicians, licensed practical nurses, medical assistants, and many others," all have vastly different duties and work schedules and therefore cannot be similarly situated. (*See* Doc. 17 at 5, 11; Affidavit of Dan Weaver, Doc. 17-1 at ¶ 14.)

Both of these arguments lack merit. Plaintiffs need only show that the proposed class "suffer[s] from a single, FLSA-violating policy," and that "proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. Courts have granted conditional class certification to similar classes of hospital employees who work in direct patient case, including registered nurses, licensed practical nurses, and nurses' aides. *See, e.g.*, *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 860 (N.D. Ill. 2013) (granting conditional certification to "nurses and hospital employees who are engaged in the direct care of patients" and noting that "[t]he nature of their interrupted meal breaks was affected by the demands of patient care"); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 211 (N.D.N.Y. 2009) (granting conditional certification of a class of a hospital's hourly employees "including but not limited to registered nurses, licensed practical nurses, nurse practitioners, and certified nurses' assistants, with direct patient care responsibilities who have been subject to automatic meal break deductions"); *Fengler v. Crouse Health Foundation, Inc.*, 595 F. Supp. 2d 189, 191 (N.D.N.Y. 2009) (granting certification to a collective action of "current and former hourly employees with direct patient care responsibilities working at Crouse Hospital").

16

The Court agrees with the findings of many other courts that a class of direct patient care employees subject to automatic meal break deductions is adequately defined for purposes of conditional certification. Because the key inquiry here is whether the plaintiffs suffer from a policy that violates the FLSA—the automatic meal break deduction—and whether the employer's policy is a violation as to all plaintiffs, Plaintiffs have met their burden by showing that the meal break policy applies to this group of direct patient care employees and alleging that they and other workers were often unable to take meal breaks and were discouraged from canceling the automatic deduction when they could not take a break. *See O'Brien*, 575 F.3d at 585 (holding that plaintiffs were similarly situated because they "articulated two common means by which they were allegedly cheated: forcing employees to work off the clock and improperly editing time-sheets"); *Murton v. Measurecomp, LLC*, No. 1:07-CV-3127, 2008 WL 5725631, at *4 (N.D. Ohio June 9, 2008) ("[A] court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice" (quotation marks and citation omitted).); *Bernal v. Vankar Enters., Inc.*, No. SA-07-CA-695-XR, 2008 WL 791963, at *4 (W.D. Tex. Mar. 24, 2008) ("Plaintiff's allegation that participation in the invalid tip pool was mandatory for all Defendants' bartenders is sufficient to meet the lenient standard for conditional certification.").

If discovery reveals that the class should be limited to a subset of the employees who provide direct patient care, the Court may address that issue on Defendants' motion at that time. *See Potoski v. Wyo. Valley Health Care Sys.*, No. 3:11-cv-582, 2013 WL 6731035, at *8 (M.D. Pa. Dec. 19, 2013); *Williams v. Owens & Minor, Inc.*, No. 09-00742, 2009 WL 5812596, at *3 (E.D. Pa. Oct. 9, 2009) (declining to limit "the size and scope of any class until discovery is complete and the issue of final certification is before the Court").

Finding that Plaintiffs have made the modest factual showing that they are similarly situated to other employees at Memorial Health System who provide direct patient care, the Court **GRANTS** Plaintiff's Motion for Conditional Collective Action Certification.

### III.     MOTION FOR RECONSIDERATION

On June 7, 2016, the Magistrate Judge granted Defendants' motion to compel Plaintiffs' depositions and Plaintiffs moved to reconsider the Magistrate Judge's order. (Docs. 35, 36.) Plaintiffs contend that "instead of making this a special case where discovery is allowed, the Court should have simply bifurcated discovery." (Doc. 36 at 2.)

Under Federal Rule of Civil Procedure 72(a), a party may object to a Magistrate Judge's pretrial order on nondispositive matters. This Court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed R. Civ. P. 72(a); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). Review under Rule 72(a) provides "considerable deference to the determinations of magistrates." *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995) (citation omitted).

Plaintiffs note in their motion for reconsideration that depositions are scheduled for August 23, 2016 through August 26, 2016. Because the depositions have not yet been conducted, Plaintiffs have not been prejudiced by the Magistrate Judge's order allowing discovery before the resolution of the conditional-certification motion and discovery may now proceed under the typical FLSA discovery procedure in this Court. Therefore, the Motion for Reconsideration is **DENIED as MOOT**.[4]

---

[4] To the extent that Plaintiffs also object to the portion of the Magistrate Judge's order denying the motion to expedite discovery, the Court also overrules this objection. Plaintiffs' argument that discovery should be expedited is essentially moot at this point because now that the Court has granted conditional certification and ordered notice to all opt-in plaintiffs, these opt-in plaintiffs will be able to opt into the lawsuit promptly. Plaintiffs do not offer any other

Further, because the Court has resolved the Motion for Reconsideration, the Motion to Stay pending a resolution of the motion for reconsideration is also **DENIED as MOOT**.

### IV.    NOTICE

Under the FLSA, a lawsuit to recover unpaid compensation must "be commenced within two years after the cause of action accrued," unless the plaintiff demonstrates the cause of action arose "out of a willful violation," in which case the statute of limitations is three years.  29 U.S.C. § 255(a).  The action is considered to have commenced as to each individual opt-in plaintiff only when she files written consent to join the action.  29 U.S.C. § 256.  Although Defendants have requested a hearing on the content and manner of the notice, the Court sees no need to deviate from its normal procedure of approving the notice without a hearing.  *See e.g.*, *Crescenzo v. O-Tex Pumping, LLC*, No. 15-cv-2851, 2016 WL 3277226, at *6 (S.D. Ohio June 15, 2016); *Sisson v. OhioHealth Corp.*, No. 2:13-cv-517, 2013 WL 6049028, at *8 (S.D. Ohio Nov. 14, 2013); *Snelling v. ATC Healthcare Servs. Inc.*, 2:11-cv-983, 2012 WL 6042839, at *6 (S.D. Ohio Dec. 4, 2012); *Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2011 WL 6149842, at *7 (S.D. Ohio Dec. 9, 2011).

The Court **ORDERS** the parties to confer as to the proper form of the notice and submit a proposed notice form and opt-in consent form within fourteen days of the date of this order.  If the parties disagree as to any specific language in the notice and opt-in consent form, the parties may note the disputed language, with accompanying briefing as necessary, and the Court will promptly determine which language to use.  At the same time, the parties shall also submit a proposed plan for the distribution of the notice to all potential opt-in plaintiffs employed by

---

explanation for why expedited discovery is required other than to provide identifying information for Defendants' employees, which the Court will order Defendants to provide when it issues an order approving the notice and opt-in consent form.  Therefore, Plaintiffs have shown no need for expedited discovery.

Defendant at any time from three years prior to the granting of this motion to the present.[5]  In the event of a disagreement on the distribution procedure, the parties shall submit simultaneous briefing on the matter.  No responsive briefing will be permitted.

## V.     CONCLUSION

The Court **GRANTS** Plaintiffs' Motion for Conditional Collective Action Certification (Doc. 6); **DENIES as MOOT** Plaintiffs' Motion for Reconsideration (Doc. 36); and **DENIES as MOOT** Plaintiffs' Motion to Stay.  (Doc. 37.)  The Court **CERTIFIES** the following class:

> All of Defendants' current and former hourly employees who were responsible for direct patient care and were subject to Defendants' automatic meal deduction policy at any time during the three years prior to the granting of this motion to the present.

The Court **ORDERS** the parties to confer as to the proper form of the notice and opt-in consent form and submit to the Court a proposed notice and consent form and plan for their distribution **within fourteen (14) days** of the date of this order, and in the alternative, to notify the Court by that date of any disputes as to the language or distribution of the notice and opt-in consent form.

**IT IS SO ORDERED.**

     s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  August 17, 2016**

---

[5] Although Plaintiffs ask the Court to certify the class from the time period of the three years preceding the filing of the complaint, collective-action certification is appropriately limited to the three years prior to the date of approval of the notice, not the filing of the lawsuit. *See, e.g.*, *Crescenzo*, 2016 WL 3277226, at *5; *Atkinson v. Teletech Holdings, Inc.*, No. 3:14-cv-254, 2015 WL 853234, at *3 (S.D. Ohio Feb. 26, 2015).