**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **LYNNETT MYERS, et. al,**<br><br>      **Plaintiffs,**<br><br>      **v.**<br><br>**MEMORIAL HEALTH SYSTEM<br>MARIETTA MEMORIAL HOSPITAL,**<br><br>      **Defendant.** | **Case No. 2:15-cv-2956**<br><br>**Judge Algenon L. Marbley**<br><br>**Magistrate Judge Terrence P. Kemp** |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiffs hereby submit the following Reply Brief in Support of their Motion for a Preliminary Injunction. For the reasons stated below and in Plaintiffs' motion, the Court should **GRANT** Plaintiffs' Motion for a Preliminary Injunction.

**I.  Background**

On March 1, 2017, Plaintiffs filed a motion for a temporary restraining order seeking to enjoin Defendants from engaging in further unilateral communications with putative class members that were intimidating, misleading, and had the effect of discouraging participation in the instant action. (ECF No. 97.) This Court set a status conference pursuant to Local Rule 65.1 for Plaintiffs' motion on March 3, 2017, at 11:00 a.m. (ECF No. 98.) Defendants responded to Plaintiffs' motion on March 3, 2017. (ECF No. 100.)

During the status conference the Court granted Plaintiffs' motion and directed the Parties to confer and draft proposed language for a narrowly tailored injunction that would not curtail Defendants' ability to conduct its business operations. Defendants' Counsel wrote the first draft

and emailed it to Plaintiffs' Counsel. Plaintiffs' Counsel agreed to the proposed language and made no changes. The Parties subsequently submitted the proposed injunction to the Court.

The Court issued an order finding "that Plaintiffs have demonstrated sufficient immediacy and irreparability of injury to warrant the issuance of a temporary restraining order," and the Court adopted the proposed language, enjoining Defendants "from communicating with putative class members about the lawsuit styled *Lynnett Myers, et al. v. Memorial Health System, et al.*, Case No. 2:15-cv-2956, Southern District of Ohio." (ECF No. 101.)

In that same order, the Court set a preliminary injunction hearing for this matter on March 30, 2017 at 9:30 a.m. The Court directed the parties to file simultaneous briefs in support of their positions on or before Friday, March 17, 2017, and simultaneous reply briefs on or before Wednesday, March 22, 2017.

**II.     Discussion**

"The purpose of a preliminary injunction is to preserve the *status quo* until the district court can hold a trial on the merits." *Entm't Prods., Inc. v. Shelby Cty.*, 545 F. Supp. 2d 734, 740 (W.D. Tenn. 2008) (citing *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004)). When determining whether to grant a preliminary injunction, this Court must balance the following four factors: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met. *See Washington v. Reno*, 35 F.3d 1093, 1098 (6th

Cir. 1994). No single factor will be determinative as to the appropriateness of equitable relief, *see In re DeLorean Motor Co.*, 755 F.2d at 1229, and "the district court's weighing and balancing of the equities is overruled 'only in the rarest of cases.'" *In re Eagle-Picher*, 963 F.2d at 858 (*quoting N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989)).

Defendants' arguments misapprehend the preliminary injunction standard.

### 1. There is a High Likelihood of Success on the Merits of Plaintiffs' Underlying Claims

The first factor a district court considers when determining whether to issue a preliminary injunction is the likelihood of success on the merits of the plaintiffs underlying claims. *N.A.A.C.P.* at 167 (enjoining a city from hiring firemen based on the likelihood of success on the plaintiffs 28 U.S.C. § 1981 class action claim). In their brief, Defendants did not address the merits of Plaintiffs' underlying claims but instead addressed whether Plaintiffs can establish harm sufficient to limit Defendants' unilateral communications with putative class members.[1] (ECF No. 111.) Plaintiffs' brief contains exhaustive evidence and argument clearly establishing that they have a very strong likelihood of success on the merits. (ECF No. 112.) Therefore, in the absence of arguments to the contrary, the Court should find that Plaintiffs have established the first preliminary injunction factor.

### 2. There is Irreparable Injury to The Plaintiffs Absent the Injunction

The sum total of Defendants' argument regarding Plaintiffs' irreparable harm is as follows:

---

[1] As a housekeeping matter, the term "putative class member" needs to be defined. This case is a hybrid class action / FLSA collective action. After the Court conditionally certified a collective action in this case, Defendants were required to provide a collective class list. Currently that list consists of 1,954 names. Every individual on that list has viable state law claims, and therefore is a potential member of the Rule 23 class action. The Court has not yet made a ruling on class certification in this case. **Therefore, every individual on the collective class list (all 1,954) is currently a putative class member.**

> Here, Plaintiffs have not even sustained an injury, let alone an irreparable injury. The "threat" complained about are interviews that occurred on February 15 and 17, 2017, two months after the opt-in period closed.[2]

(ECF No. 111 at 11.) Clearly Defendants back into their conclusion that Plaintiffs have not suffered irreparable harm by choosing to consider only Defendants' most recent unilateral communications.[3] Tellingly, Defendants ignore all of the additional communications and actions cited by Plaintiffs in their motion for a temporary restraining order and in Plaintiffs' motion for preliminary injunction. These events did not occur in a vacuum. Numerous facts lead to the inescapable conclusion that the Defendants have created an atmosphere of fear wherein any unilateral communications with putative class members would intimidate, coerce, and discourage participation in this lawsuit.

After reviewing the record in its entirety, a court may "limit communications with absent class members where the communications were . . . an improper attempt to undermine Rule 23 by encouraging class members not to join the suit." *Belt v. Emcare, Inc.,* 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003); *see also Kleiner v. First Nat. Bank of Atlanta,* 751 F.2d 1193, 1199, 1206 (11th Cir. 1985) (finding that a district court had the power to void "opt-outs" by class members that stemmed from defendant's improper communications with putative class members). Indeed, a district court's authority under Rule 23(d) is not limited to communications that actually mislead or otherwise threaten to create confusion, but extends to communications that interfere with the proper administration of a class action or those that abuse the rights of members of the class. *Cobell v. Norton,* 212 F.R.D. 14, 19 (D.D.C. 2002). "A unilateral communications scheme,

---

[2] The remainder of Defendants' discussion of irreparable harm pertains to their position that Plaintiffs are attempting to preclude Defendants from conducting investigations and securing evidence. There arguments are addressed below under element 3. Harm to Others.

[3] Defendants incorrectly assert that the three individuals called into meetings and asked to sign documents are non-parties. Although Maralee Alkire, Mary Goode, and Gina Tucker did not opt-in to the collective action, they are still absent putative class members with viable state law claims.

moreover, is rife with potential for coercion. If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive." *Kleiner,* 751 F.2d at 1202 (internal quotations, citations and brackets omitted); *see also Hampton Hardware v. Cotter & Co.,* 156 F.R.D. 630, 633-34 (N.D. Tex. 1994) (holding evidence of letters discouraging participation in lawsuit, an ongoing business relationship between the parties and plaintiffs' dependence on defendant for supplies sufficient to prohibit all litigation-related communication prior to class certification); *Tedesco v. Mishkin,* 629 F. Supp. 1474, 1484 (S.D.N.Y. 1986).

As discussed in Plaintiffs' brief, Defendants' "unsupervised contacts with putative class members, which resulted in those members signing affidavits expressing a lack of interest in participating in this action without the advice of independent counsel or the benefit of a court-approved notice, are cause for serious concern." *Gortat v. Capala Bros.*, No. 07-CV-3629(ILG)(SMG), 2009 U.S. Dist. LEXIS 101837, at *35-36 (E.D.N.Y. Oct. 16, 2009); s*ee, e.g., Cobell v. Norton*, 225 F.R.D. 4, 7 (D.D.C. 2004) (finding that the court may act *sua sponte* to limit communications between defendants and class members when it is in the best interests of the class). *See also Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985) (pointing out that "[]unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal."); *Ralph Oldsmobile Inc. v. Gen. Motors Corp*., 2001 U.S. Dist. LEXIS 13893, 2001 WL 1035132, at *4 (S.D.N.Y. Sept. 7, 2001) (finding potential for abuse sufficient to warrant court intervention where putative members purportedly released claims against defendants without knowing about the pending litigation).

Moreover, putative class members are "vulnerable, as well as very reliant on the business relationship with the Defendants," especially given the fact Defendants make up the largest employer in the county. *See, e.g.. Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 485 (S.D.N.Y. 2012) (finding enough potential for abuse to warrant a limited restriction on defendant's right to communicate with putative class members where defendant was the employer of a class consisting of "any waiter, runner, busser and dishwasher who performed any services for the ... [r]estaurant"); *Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d at 253 (finding potential for coercion where "the potential class consisted of cardholders who depend on defendants for their credit needs"); *Ralph Oldsmobile*, 2001 U.S. Dist. LEXIS 13893, 2001 WL 1035132, at *4 (finding potential for coercion where "the potential class members [car dealers] depend upon the defendant [General Motors] for information, supplies, and credit"); *Kleiner*, 751 F.2d at 1202 (finding communications were likely coercive based on business relationship where the "class consisted of Bank borrowers, many of whom were dependent on the [defendant] Bank for future financing" and "bank customers affected by the litigation included those who anticipated seeking ... discretionary financial indulgence[s] from their loan officers, and who did not have convenient access to other credit sources"); *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994) (finding potential for coercion where defendant was wholesaler, and class members were hardware stores who "necessarily rel[ied] upon the defendant for dissemination of factual information regarding hardware goods and for lower prices in purchasing those goods").

Importantly, Plaintiffs have not requested a permanent injunction. Plaintiffs simply seek to preserve putative class members' rights pending a decision on class certification. District courts routinely "take into consideration the irreparable harm faced by putative class members

before class certification because of the nature of injunctive relief at this stage of the litigation." *Lapeer County Medical Care Facility v. Michigan,* 765 F. Supp. 1291, 1301 (W.D. Mich. 1991) (prior to certification, court treated case as class action); *Musto v. American General Corp.,* 615 F. Supp. 1483, 1492 (W.D. Tenn. 1985) (preliminary injunction may issue prior to certification), *rev'd on other grounds,* 861 F.2d 897 (6th Cir. 1988), *cert. denied,* 490 U.S. 1020, 104 L. Ed. 2d 182, 109 S. Ct. 1745 (1989).

Simply put, the **cumulative effect** of Defendants retaliatory, coercive, and intimidating communications and actions has tainted Defendants' ability to unilaterally discuss this lawsuit with putative class members. And, Defendants' failure to address the totality of the record is a fatal error that renders a decision in Plaintiffs' favor on this element mandatory.

### 3. There is No Substantial Harm to Others

In their brief, Defendants have asserted that they should prevail on this element because "to enjoin Mr. Weaver from doing his job would substantially harm the Hospital's workforce" because the basic protections afforded by local, state and federal law would be "in jeopardy". (ECF No. 111 at 12.) In other words, unless Dan Weaver, the Director of Human Resources, is granted unfettered license to interview putative class member employees about this lawsuit, then Defendants cannot "ensure a workplace free of harassment and threats." (ECF No. 111 at 11.) Defendants' premise does not inspire confidence in their conclusion.

Defendants do not have nor do they need an absolute right to unilaterally investigate the claims in this case. In *Bower v. Bunker Hill Co.*, 689 F. Supp. 1032 (E.D. Wash. 1985), the court rejected the defendants' request to contact class members, where the defendants' "articulated reason" for the contact was "to obtain information to aid in the preparation of [their] own case" *Id.* at 1034. The court concluded that the need articulated by the defendants "is present in every

7

case and can be readily filled by the use of the discovery process." *Id.* It also noted that "the imbalance in knowledge and skill which exists between class members and defense counsel presents an extreme potential for prejudice to class members' rights." *Id.*; *see e.g.*, *Jackson v. Bloomberg, L.P.*, No. 13-CV-2001 (JPO), 2015 U.S. Dist. LEXIS 52581, at *7 (S.D.N.Y. Apr. 22, 2015) ("if [defendant] wishes to elicit information from class members, it must do so through depositions or other discovery."); *Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662, 666 (E.D. Pa. 2001) (noting, after denying defense counsel the ability to informally interview certain putative members of a class action related to the case in issue, that the defendant remained free to use formal discovery to "the extent permitted under the federal discovery rules").

Defendants have no need to conduct further unilateral investigations. Importantly, the deadline for discovery related to class certification is closed and had closed before this Court issued its temporary restraining order. Accordingly, Defendants cannot conduct further discovery on this issue. Additionally, Plaintiffs do not seek to preclude Defendants from engaging in all investigations—only those outlined in the injunction.

Accordingly, Defendants' assertion that an injunction will prevent their ability to mount a legal defense lacks merit and the Court should find that there is no harm to others.

### 4. Public Interest

Defendants assert that because "no one has testified that they refused to participate because of some threat, explicit or otherwise" that the public interest favors denying Plaintiffs' request for a preliminary injunction. (ECF No. 111 at 12). While Plaintiffs assert that they do not follow this logic, they would respectfully submit that vindication of FLSA rights is always in the public interest.

### III. First Amendment Arguments

Defendants do not argue that the current injunction as it stands violates their First Amendment rights. One reason for Defendants' decision not to challenge the current injunction could be that Defendants believe it is narrowly tailored such that it does not prohibit Defendants from carrying out the important business of a health care system. Another reason could be that Defendants cannot justify taking a position against an injunction, the language of which Defendants drafted and recommended.

Not only does the injunction go uncontested, but Defendants also leave unidentified any specific type of commercial speech that warrants protection. In the realm of litigation, a fair and just result often presupposes restraints on the speech of the parties. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S. Ct. 2199, 2207 n. 18, 81 L. Ed. 2d 17 (1984). As a threshold matter, untruthful or misleading speech has no claim on first amendment immunity. *Central Hudson Gas Co. v. Public Service Commission*, 447 U.S. 557, 566, 100 S. Ct. 2343, 2351, 65 L. Ed. 2d 341 (1980); *Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771, 96 S. Ct. 1817, 1830 (1975). Commercial speech merits constitutional safeguards only to the extent it is accurate, in keeping with its purpose of ensuring the free flow of reliable information crucial to independent decision making. No constitutional objection thus inheres in banning "forms of [commercial] communications more likely to deceive the public than to inform it. . . ." *Central Hudson*, 447 U.S. at 563, 100 S. Ct. at 2350 (citations omitted).

Commercial speech that *is* protected is legitimately subject to stricter governmental regulations than that allowed for noncommercial expression, *see Virginia Pharmacy Board*, 425 U.S. at 771-72 & n. 24, 96 S. Ct. at 1830-31 n. 24; *United States Postal Service v. Athena Products, Ltd.*, 654 F.2d 362, 367 (5th Cir. Unit B 1981), *cert. denied*, 456 U.S. 915, 102 S. Ct.

1768, 72 L. Ed. 2d 173 (1982), consistent with the "subordinate position in the scale of First Amendment values" assigned to commercial speech. *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456, 98 S. Ct. 1912, 1918, 56 L. Ed. 2d 444 (1978). In the brief life of the commercial speech doctrine, the Supreme Court has repeatedly warned that traditional prior restraint safeguards do not necessarily extend to questions of commercial speech. *See Central Hudson*, 447 U.S. at 564 n. 6, 571 n. 13, 100 S. Ct. at 2350 n. 6, 2354 n. 13; *Friedman v. Rogers*, 440 U.S. 1, 10 & n. 9 (1979); *Virginia Pharmacy Board*, 425 U.S. at 771-72 n. 24.

Without challenging the current injunction or identifying any legitimate commercial speech concerns, Defendants' arguments regarding the First Amendment are without merit. Defendants drafted and narrowly tailored the current injunction that governs this litigation. As such, the injunction should stand.

Plaintiffs, however, do not seek to prohibit Defendants from carrying out the important business of a health care system. Plaintiffs only seek to prevent Defendants from engaging in further inappropriate communications regarding this lawsuit, as these communications have had the effect of discouraging putative class members from vindicating their rights under the law. Accordingly, if the Court determines the injunction needs to be further narrowly tailored, Plaintiffs are happy to work with the Court to create an injunction that protects putative class members, while not impeding Defendants ability to engage in legitimate business activities.

**IV. Conclusion**

Defendants do not argue that they will be harmed by any of the other remedies requested in Plaintiffs' motion for temporary restraining order or in Plaintiff's motion for preliminary injunction. Because Defendants have articulated no legitimate or specific harm, a balance of the

four preliminary injunction factors weighs in favor of Plaintiffs. Accordingly, and for all of the reason therein and herein, Plaintiffs respectfully request that the Court grant all relief requested.

          Respectfully submitted,

          /s/ Steven C. Babin, Jr.
          Steven C. Babin, Jr.   (0093584)
          Lance Chapin           (0069473)
          Chapin Legal Group, LLC
          580 South High Street, Suite 330
          Columbus, Ohio 43215
          Telephone:    614.221.9100
          Facsimile:    614.221.9272
          E-mail:   sbabin@chapinlegal.com

          Attorneys for Plaintiffs
          Lynnett Myers, *et al.*

## Certificate of Service

I hereby certify that on this the 22nd day of March, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of this electronic filing to the following:

James E. Davidson
James.davidson@icemiller.com
Ice Miller
250 West Street
Columbus, OH 43215
Telephone: 614.462.2700
Facsimile: 614.462.5135
Counsel for Defendant

                                                /s/ Steven C. Babin, Jr.
                                                Steven C. Babin, Jr. (0093584)
                                                Chapin Legal Group, LLC
                                                Attorney for Plaintiffs Lynnett Myers, *et al.*