IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LYNNETT MYERS, *et al.*,                 :
                                         :          Case No. 2:15-CV-2956
            Plaintiffs,                  :
                                         :          JUDGE ALGENON L. MARBLEY
      v.                                 :
                                         :          Magistrate Judge Vascura
MARIETTA MEMORIAL                        :
HOSPITAL, *et al.*,                      :
                                         :
            Defendants.                  :

OPINION & ORDER

This matter is before the Court on Plaintiffs' Motion for Class Certification Pursuant to

Rule 23 of the Federal Rules of Civil Procedure and Issuance of Opt-Out Notice.  (Doc. 74.)  For

the reasons set forth below, Plaintiffs' motion is **GRANTED**.

## I.   BACKGROUND

### A.  Factual Background

Plaintiffs Lynnett Myers, Carol Butler, and Arva Lowther are former nurses at Defendant

Marietta Memorial Hospital, which is operated by Memorial Health System.  (*See generally*

Second Am. Compl., Doc. 146.)  Memorial Health System also operates Defendants Selby

General Hospital and Marietta Health Care, Inc., and all of these entities function as joint

employers of Memorial Health System's employees and operate as a single integrated system.

(*See id.* ¶¶ 13–15.)  Plaintiffs allege that Defendants' policy of automatically deducting thirty

minutes for a meal break for nurses and patient care technicians violates the FLSA and Ohio

wage laws because employees are routinely prohibited from either taking an uninterrupted meal

break or canceling the automatic deduction.  Plaintiffs ask the Court to certify the following

class, which is a "discrete subclass of the Collective Class" that this Court conditionally certified

as a collective action:

> All of Defendant[s'] current and former <u>Nurses and Patient Care Technicians</u> who were hourly employees and subject to Defendant[s'] automatic meal deduction policy during the three years before this Complaint was filed up to the present.

(Doc. 74 at 2.)

### 1. The Evidence Supporting Plaintiffs' Motion

As stated above, named Plaintiffs Lynnett Myers, Carol Butler, and Arva Lowther

worked as nurses in multiple departments for Defendants at various time periods between 2004

and 2015. (*See* Doc. 74-1 ¶¶ 1–5; Doc. 74-2 ¶¶ 1–5; Doc. 74-3 ¶¶ 1–5.) They were hourly

employees who often worked more than 40 hours per week. (*See* Doc. 74-1 ¶ 5; Doc. 74-2 ¶ 5;

Doc. 74-3 ¶ 5.) All three women submitted affidavits stating that patient care employees did not

clock in and out for meal breaks, and that the hospital had a policy of regularly deducting 30

minutes from each shift for a meal period, regardless of whether the employees actually received

meal breaks. (*See* Doc. 74-1 ¶¶ 6–7; Doc. 74-2 ¶¶ 6–7; Doc. 74-3 ¶¶ 6–7.) They also stated that

they could not recall a single day in the past three years during which they were able to take a

30-minute meal break free from their job duties, and that they were aware of other employees

who had the same experience. (*See* Doc. 74-1 ¶¶ 6–9; Doc. 74-2 ¶¶ 6–9; Doc. 74-3 ¶¶ 6–9.)

Finally, Plaintiffs attested that they were reprimanded when they attempted to cancel the

automatic lunch deductions,[1] were discouraged from leaving the floor during scheduled meal

breaks, and that managers were aware that nurses were required to work or were interrupted

during their meal breaks, but did not ensure that nurses were completely relieved of work duties

during their uncompensated meal breaks. (*See* Doc. 74-1 ¶¶ 1–5; Doc. 74-2 ¶¶ 1–5; Doc. 74-

3 ¶¶ 1–5.)

---

[1] Plaintiffs refer to cancelling the automatic lunch deduction as "clocking out no lunch."

Named Plaintiff Arva Lowther confirmed this information in her deposition testimony. (*See* Doc. 75-1.)  Lowther also testified that she spoke with several managers about not having time to take a lunch, yet not getting paid for working through lunch, and also testified that one of her managers, Mandy Riess, told her and other employees not to clock out no lunch.  Lowther also testified that she received inadequate training on how to clock out no lunch using the timekeeping system.  Finally, Lowther testified that management altered payroll; thus, she was unable to confirm that she was paid for working through lunch even when she did cancel the meal deduction.

Named Plaintiff Carol Butler's deposition testimony closely mirrors Lowther's.  (*See* Doc. 75-2.)  Butler also testified that she complained to managers at monthly meetings about not being able to take a lunch, and recalled that on two occasions, she was reprimanded by Reiss after clocking out no lunch.

Finally, opt-in plaintiffs Kim Weckbacker, Melinda Johnson, Joshua Booth, and Mary Clegg submitted affidavits in support of Plaintiffs' motion.  (Docs. 74-4; 74-5; 74-6; 74-7.)  And opt-in plaintiff Billie Long submitted a letter detailing her employment for Defendants.  (Doc. 74-9.)  All of these opt-in plaintiffs confirmed that they worked through their lunches and were not paid.  Additionally, all of the opt-in plaintiffs affirmed that they have spoken with fellow employees who are afraid to join the lawsuit, for fear that their employment will be terminated.

### 2.  Defendants' Policies

Plaintiffs allege that all of Defendants' written policies governing the use of the auto-deduct timekeeping system "render the entire auto deduct policy facially illegal." (Doc. 74 at 13.)  More specifically, Plaintiffs claim that Defendants' auto-deduct policy violates the Ohio Prompt Pay Act, Ohio's minimum wage and hour statute (which expressly incorporates the

standards and principles of the FLSA), and the FLSA.  (*See id.* at 3–5.)  Even though certain of

these policies *appear* legal (e.g., the policy forbidding employees from working off the clock),

Plaintiffs argue that the evidence they submitted confirms that they are not followed in practice.

The written policies are as follows:

- 5.1 Scheduling of Lunch periods is the responsibility of the manager. A normal
  lunch period is 30 minutes.
  . . .

  5.4 Employees are not permitted to work their lunch period without permission of
  their Department Manager or Supervisor

    5.4.1 Employees who are unable to take an uninterrupted lunch
    break due to work load will be instructed to **cancel** their lunch
    deduction by their supervisor or may be released from work 30
    minutes early.  (Doc. 74, Ex.  J.)

According to Plaintiffs, this particular policy is facially illegal because it "places the onus

on the employee to maintain records[,] not the employer."  (Doc. 74 at 13.)  In addition, it

"affirmatively provides supervisors an option not to pay employees for hours worked during an

unpaid lunch"; it gives Defendants the ability to shorten the employees' workday rather than pay

employees for all hours worked.  (*See id.* at 14.)

- 1.1 It is the policy of Memorial Health System that the Department Manager
  maintain the payroll process for their departments. Each Manager is responsible
  for approving the final bi-weekly payroll and assuring the payroll is reported
  according to the following guidelines.
  . . .

  2.1 Employees enter all time through the Time and Attendance System. They
  should not enter benefit hours in excess of what appeared on their last paystub.
  . . . .

  2.2 Managers are to have all corrections/additions made to their payroll and approved
  by noon, Monday of Pay week.  (Ex. K.)

Under this policy, managers who have not seen employees working are permitted to alter payroll records without putting the employee on notice.  (Doc. 74 at 17.)  Plaintiffs allege that Defendants *did* alter payroll records when employees attempted to clock out no lunch.  (*Id.*)

## B.  Procedural History

Plaintiffs commenced this collective and class action against Defendants Marietta Memorial Hospital, Marietta Health Care, Inc., and Selby General Hospital in October 2015. (Compl., Doc. 1.)  They bring causes of action under the FLSA and related Ohio laws.  (*See* Second Am. Compl., Doc. 146.)

In August 2016, this Court certified conditionally the following class under the FLSA:

> All of Defendants' current and former hourly employees who were responsible for direct patient care and were subject to Defendants' automatic meal deduction policy at any time during the three years prior to the granting of [the motion for conditional certification] to the present.

(Doc. 42 at 20.)  After this case was conditionally certified as a collective action, Plaintiffs filed a motion for a temporary restraining order, alleging that Defendants "coerced, intimidated and harassed" absent class members and created an "atmosphere of fear" such that class members were afraid to opt in to the lawsuit.  (Doc. 97 at 2.)  The Court granted Plaintiffs' motion, and granted in part their subsequent motion for a preliminary injunction.  (Doc. 112.)  In granting Plaintiffs' motion for a preliminary injunction, the Court re-opened the opt-in period for the class of nearly 2000 individuals through May 1, 2017, and permitted Plaintiffs to reissue the previously approved notice to the entire class.  (*See* Doc. 136 at 14.)  Defendants were also enjoined and restrained from communicating directly or indirectly with putative class members about the lawsuit, with the injunction to remain in place until the Court issues a ruling on the instant motion.  (*See id.* at 13.)

Plaintiffs now move to certify under Federal Rule of Civil Procedure 23 a subclass of the class previously conditionally certified by the Court. The Rule 23 class "includes only nurses and patient care technicians that were paid hourly and subject to the auto deduct policy, whereas the conditionally certified collective class includes all employees responsible for direct patient care that were paid hourly and subject to the policy." (Doc. 74 at 7.) Defendants have not yet provided Plaintiffs with a complete collective class list. (*Id.*) Because Plaintiffs are still waiting for a complete list, but have "developed evidence relevant to the proposed Rule 23 Class," they "intend to file targeted Rule 23 motions for subclasses as discovery proceeds." (*Id.*) Therefore, "this motion represents the first in a series of motions for class certification," and this motion is now ripe for adjudication. (*Id.*)

## II. LEGAL STANDARD

This is a hybrid FLSA collective action and Rule 23 class action. There is "nothing inherently incompatible between an FLSA opt-in suit and Ohio Act Rule 23 class action and . . . they are able to coexist within the same litigation." *Wade v. Werner Trucking Co.*, No. 2:10-cv-270, 2011 WL 320233, at *2 (S.D. Ohio Jan. 28, 2011). While Rule 23 "requires a significantly higher showing" for class certification than the FLSA, *Castillo v. Morales*, 302 F.R.D. 480, 486 (S.D. Ohio 2014) (Marbley, J.), where, as here, "a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202–03 (S.D.N.Y. 2006).

Rule 23 allows one or more members of a class to sue as representative parties only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) (referred to by the shorthand of "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy."). In addition, class certification is appropriate, as relevant here, if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* 23(b)(3).

Before certifying a class action, this Court is required to conduct a "rigorous analysis" to determine whether the requirements of Rule 23 have been met. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). In ruling on a motion for class certification, the Court is prohibited from considering the merits of Plaintiffs' claims, but the Court may consider evidence outside of the pleadings to determine whether the prerequisites of Rule 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n. 12, (1978); *see also* 1 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS § 3:12 (6th ed. 2009) ("Consensus is rapidly emerging among the United States Courts of Appeal. The First, Second, Third, Fourth, Fifth, Seventh, Eighth, Tenth and Eleventh Circuits have expressly adopted certification standards that require rigorous factual review and preliminary factual and legal determinations with respect to the requirements of Rule 23 even if those determinations overlap with the merits."). Plaintiffs bear the burden of showing that the elements of Rule 23 are met. *See Falcon*, 457 U.S. at 161.

### III. ANALYSIS

### A. Plaintiffs Meet the Requirements of Rule 23(a).

1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiffs are not required to "establish that it is impossible to join all members of the proposed class, but simply that joinder would be 'difficult and inconvenient.'"  *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) (quoting *Day v. NLO*, 144 F.R.D. 330, 333 (S.D. Ohio 1992)).  The Sixth Circuit has recognized that, although there is "no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement."  *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (internal citation omitted).  Indeed, the "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)."  *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (finding that a proposed class of 800 current and former employees satisfied Rule 23(a)(1)) (citation omitted); *see also Snelling v. ATC Healthcare Servs. Inc.*, No. 2:11-CV-983, 2012 WL 6042839, at *5 (S.D. Ohio Dec. 4, 2012) (Often, "a class of 40 or more members is sufficient to meet the numerosity requirement.").

Here, the numerosity requirement is satisfied by the "sheer number of potential litigants in the class."  *Id.*  Defendants have provided a class list that contains 1168 nurses and patient care technicians, and this list is not yet complete.  (Doc. 74 at 23; Doc. 74, Ex. M.)  A potential class of 1168 employees is more than sufficient to satisfy numerosity, and Defendants fail to challenge Plaintiffs on this point.

Plaintiffs also note that "the potential class in this case not only meets the substantial number requirement of numerosity, but also the impracticability component."  (Doc. 74 at 23.)  In addition to considering the numerical size of the class, when determining whether joinder of all class members is impracticable, "in employment class actions like this one, a class member's potential fear of retaliation is an important consideration."  *Castillo*, 302 F.R.D. at 487 (quoting

*Swigart*, 288 F.R.D. at 183).  Here, in their affidavits, four opt-in plaintiffs affirmed that they have had conversations with their colleagues about joining the lawsuit, and that their coworkers are afraid to join the lawsuit because they believe they will be terminated.  (*See* Doc. 74, Exs. D, E, F, G.)  Additionally, these opt-in plaintiffs stated that Defendants have recently "fired a number of employees[,] contributing to an atmosphere of fear throughout the potential class members."  (Doc. 74 at 12; *see also id.* Exs. D, E, F, G.)

In rebuttal, Defendants claim that Plaintiffs have provided no admissible evidence of fear and retaliation, and instead support their claims with "subjective feelings and assumptions." (Doc. 130 at 9–10.)  Specifically, Defendants point to the fact that: (1) involuntary terminations have declined or remained steady since the filing of the lawsuit and during the opt-in period for the conditional class; and (2) the hospital had no notice of who opted in or received notice of the conditional class.  (*See id.* at 10–11.)  But the Court has heard the testimony of several of these opt-ins at the preliminary injunction hearing, and concluded that the testimony of Plaintiffs' witnesses "established a clear record of a likelihood of serious abuses by Defendants."  (Doc. 136 at 9.)

In light of the fact that the Court granted Plaintiffs' motion for a preliminary injunction, and because Defendants have not disputed the number of potential class members, the Court finds the numerosity requirement satisfied.

### 2.  Commonality

Where there are "questions of law or fact common to the class," Rule 23(a)(2) is satisfied.  Fed. R. Civ. P. 23(a)(2).  This element—referred to as "commonality"—is "not required on every question raised in a class action."  *Swigart*, 288 F.R.D. at 183.  Rather, there is commonality "when the legal question linking the class members is substantially related to the

9

resolution of the litigation . . . . Individual class members need not be 'identically situated' to

meet the commonality requirement." *Id.* (internal quotations omitted).

In their motion, Plaintiffs contend that the following 12 questions are common to all

putative class members:

- Whether Defendants knew or should have known Class Members did not take lunch, but still failed to compensate them in violation of Ohio law;

- Whether Defendants' practice of not scheduling Class Members for lunch, not supervising Class Members to ensure lunches were taken, and not providing any managerial mechanism to verify lunches were indeed taken, violated laws requiring Defendants to maintain accurate records of all time worked;

- When Class Members did not take lunch, whether Defendants' failure affirmatively to update payroll records to reflect actual time worked, which constitutes a failure to maintain accurate records, violated Ohio law;

- Whether Defendants' policy of letting Class Members leave work one half-hour early without canceling the auto deduction violates Ohio law (*See* Ex. J, Policy 80:0, 5.4.1.);

- Whether Defendants' delegating to department supervisors the task of overseeing the cancellation, including the policy of not paying Class Members for time worked through lunch periods unless they have prior authorization, violates Ohio law;

- Whether Defendants' inadequate training regarding lunch break policies, specifically Defendants' failure routinely to encourage and require Class Members to use the clock appropriately violates Ohio law;

- Whether Defendants' policy and practice of requiring Class Members to work their entire shifts without taking an uninterrupted lunch break, while not allowing or discouraging Class Members from clocking out "no lunch" violates of Ohio law;

- Whether Defendants had a policy of altering payroll and voiding any automatic deductions without giving notice to Class Members or verifying that breaks were taken in violation of Ohio law;

- Whether Defendants maintained a companywide policy to keep labor costs and hours down that caused Defendants to in turn discourage and instruct Class Members from clocking out "no lunch" in violation of Ohio Law;

- Whether Defendants violated Ohio law by failing timely to pay Class Members for all

10

hours worked on a semi-monthly basis, and never rectifying that failure to pay in a timely manner, as required under law;

• Whether Defendants' failure to schedule lunches deprived Class Members of any real opportunity to take lunch, thereby rendering any remedial opportunities illusive and making the automatic lunch deduction policy invalid under Ohio Law; and

• Whether Defendants' policy requiring Class Members affirmatively to clock out "no lunch" in order to cancel the automatic deduction impermissibly shifts the burden to record time from the employer to the employee.

(Doc. 74 at 27–28.)

Plaintiffs note that courts have "routinely certified classes with similar common questions." (*Id.* at 28.) In particular, Plaintiffs rely on *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385 (N.D.N.Y. 2011), in which the Northern District of New York certified a class of healthcare workers subject to an auto-deduct policy. In *Hamelin*, the court found the commonality and typicality requirements satisfied even though the proposed class would include over 364 job titles and covering 195 different departments, because the employees were all "hourly employees subject to the automatic meal break deduction," and the implementation of that policy gave "rise to the common legal questions of whether the policy for voiding the automatic deduction and the alleged failure to ensure that breaks were taken constitute[d] violations" of New York state law. *Id.* at 395.

According to Defendants, Plaintiffs cannot merely claim that they have suffered a violation of the same provision of law to meet the commonality requirement. Also, Defendants claim that commonality is defeated because the named Plaintiffs testified that they were aware that they could cancel the automatic lunch deduction, did so multiple times, and regularly refused to cancel their automatic lunch deductions. (*See* Doc. 130 at 14.) Additionally, Defendants note that the proposed class has cancelled lunch deductions on nearly 110,000 occasions between

11

2013 and 2015, and the hospital paid out approximately $1.2 million in cancelled lunch deductions. (*See id.* at 15.)

Because Plaintiffs did not follow their employer's policy, Defendants argue, there can be no commonality. Defendants rely on *Jungkunz v. Schaeffer's Investment Research, Inc.*, No. 1:11-cv-691, 2014 WL 1302553 (S.D. Ohio Mar. 31, 2014) and *Allen v. City of Chicago*, No 16-1029, 2017 WL 3297697 (7th Cir. Aug. 3, 2017) for this proposition; however, both cases are distinguishable. In *Jungkunz*, the policy at issue was *not* an auto-deduct policy, and there was no evidence that any employees were ever denied compensation for hours they reported working. *See Jungkunz*, 2014 WL 1302553, at *10. The *Jungkunz* court noted that "[t]here must be some evidence that the employer actually permitted the employees to work without full compensation." *Id.* (citation omitted). Here, unlike in *Jungkunz*, there is evidence in the record that employees were not scheduled for lunch breaks, that managers were aware that employees were working through their lunch breaks, and that managers actively discouraged employees from clocking out "no lunch." Similarly, in *Allen*, the court acknowledged that appellate courts have affirmed summary judgment for employees who set up processes for reporting overtime that plaintiffs did not use, but made it clear that "an employer's formal policy or process for reporting overtime will not protect the employer if the employer prevents or discourages accurate reporting in practice." *Allen*, 2017 WL 3297697, at *2 (citing *White v. Baptist Mem. Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012)).

For these reasons, Defendants' arguments against commonality are without merit. Plaintiffs have not argued only that Defendants have violated the same statutory provision with regard to all the potential class members; rather, they argue that putative class members have all been injured by Defendants common *policies and pay practices*. And, while Plaintiffs may have

testified that they did not cancel their lunch deductions for varying reasons, they have uniformly testified that they were discouraged from doing so. Accordingly, the commonality requirement is met here.

### 3. Typicality

Under Rule 23(a)(3), the "claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Although they are separate and distinct requirements, commonality and typicality 'tend to merge' and are often discussed together." *Swigart*, 288 F.R.D. at 185 (quoting *Falcon*, 457 U.S. at 157 n.13)). A class representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and the claims are based on the same legal theory." *Id.* (quotation omitted). "Typical does not mean identical, and the typicality requirement is liberally construed." *Id.* (quotation omitted).

Here, Plaintiffs argue that they satisfy the typicality requirement for the same reasons that they satisfy the commonality requirement: because Plaintiffs' claims derive from the same common policy and are based on the same legal theories. *See Swigart*, 288 F.R.D. at 185 ("The requirement of typicality focuses on the conduct of a defendant and whether a proposed class representative has been injured by the same type of conduct alleged against the defendant as other members of the proposed class. This is why a finding that commonality exists generally results in a finding that typicality also exists.") (internal citations omitted).

Defendants dispute that Plaintiffs' claims are typical of those of the class members, claiming that the named Plaintiffs have "at most, claimed that a rogue supervisor instructed them differently than the Proposed Class." (Doc. 130 at 17.) According to Defendants, while several of the named Plaintiffs claim that Mandy Reiss once instructed them to ignore Defendants'

13

"lawful compensation policy," their experience was unique and not typical of the practice of other supervisors. (*Id.*)

In reality, Plaintiffs claim that they worked for various managers and in different departments, and also stated that they spoke with many coworkers who were subject to the same policies and practices—of not receiving lunch breaks, of being told not to clock out no lunch, and of not being paid for all hours worked. For this reason, Plaintiffs meet the typicality requirement, just as they meet the commonality requirement.

### 4. Adequacy

Finally, Rule 23(a)(4) requires the Court to determine whether the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "calls for a two pronged inquiry: (1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Swigart*, 288 F.R.D. at 185–86 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

In their opposition to Plaintiffs' motion, Defendants do not address the adequacy requirement. Thus, the Court assumes Defendants concede that Plaintiffs have met this requirement.

### B. Plaintiffs Satisfy the Requirements of Rule 23(b)(3).

"When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b)." *Swigart*, 288 F.R.D. at 186. Plaintiffs seek class certification under Rule 23(b)(3), which permits certification when "questions of law or fact common to class members predominate over any questions affecting only individual members," and when "a class action is superior to other

14

methods available for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

With regard to predominance, given the "interplay between the requirements of 23(a) and (b), . . . a finding of commonality will likely satisfy a finding of predomination." *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 487 (S.D. Ohio 2004) (Marbley, J.).  "Issues are considered to predominate when there is a 'common nucleus of operative fact' among all class members."  *Id.*  (citation omitted).  Here, predominance is satisfied because the liability questions identified above are the same for all putative class members.

As for superiority, Rule 23(b)(3) lists four factors to be considered in determining the superiority of proceeding as a class action compared to other methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3). Here, all of these factors weigh in favor of Plaintiffs.  Plaintiffs have no interest in litigating their claims individually, and they can prove class member claims through representative evidence. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016).  In addition, as Plaintiffs point out, the fact that individual class members have relatively small claims, are still employed by Defendants, and fear reprisal also weigh in favor of finding that a class action is superior.  (*See* Doc. 74 at 36.)

Defendants offer no arguments against predominance that are different than those raised against the commonality requirement, and completely ignore the superiority requirement.  For these reasons, the Court finds that Plaintiffs have satisfied the requirements of Rule 23(b)(3).

### C.  Opt-out Notice

Plaintiffs ask the Court to order opt-out notices to be sent to class members immediately. Defendants do not object to the issuance of an opt-out notice.  The Court orders the parties to meet and confer and submit a joint proposed notice form to the Court within **14** days of the date of this Order.  In terms of the content of the notice, "[b]ecause these potential Rule 23 class members already received notice of the FLSA action, the Rule 23 notice should explain why they are receiving a second notice and should explain the opt-out procedure that applies to the state law claims."  *Cruz v. TMI Hospitality, Inc.*, No. 14-cv-1128, 2015 WL 6671334, at \*13 (D. Minn. Oct. 30, 2015).

### IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiffs' motion for class certification under Rule 23, and **ORDERS** the parties to submit a joint proposed opt-out notice within **14** days of the issuance of this Order.

**IT IS SO ORDERED.**

**/s/ Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  September 11, 2017**

16