IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LYNNETT MYERS,** *et al*, | : |
| | :     **Case No. 2:15-CV-2956** |
| **Plaintiffs,** | : |
| | :     **JUDGE ALGENON L. MARBLEY** |
| **v.** | : |
| | :     **Magistrate Judge Chelsey M. Vascura** |
| **MEMORIAL HEALTH SYSTEM** | : |
| **MARIETTA MEMORIAL HOSPITAL,** *et al* | : |
| | : |
| **Defendants.** | : |

## OPINION & ORDER

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment. (ECF No. 176). For the reasons below, Plaintiffs' Motion is **DENIED**.

### I.    BACKGROUND

#### A.  Factual Background

The facts of this case are recited in this Court's earlier Opinion and Order granting class certification and are reproduced here. (ECF No. 171).

1. *The Plaintiffs' Testimony*

Plaintiffs Lynnett Myers, Carol Butler, and Arva Lowther are former nurses at Defendant Marietta Memorial Hospital, which is operated by Memorial Health System. (*See generally* ECF No. 146). Memorial Health System also operates Defendants Selby General Hospital and Marietta Health Care, Inc., and all of these entities function as joint employers of Memorial Health System's employees and operate as a single integrated system. (*Id.* at ¶¶ 13–15.) Plaintiffs allege that Defendants' policy of automatically deducting thirty minutes for a meal break for nurses and patient care technicians violates the Fair Labor Standards Act

("FLSA") and Ohio wage laws because employees are routinely prohibited from either taking an uninterrupted meal break or canceling the automatic deduction.

Named Plaintiffs Lynnett Myers, Carol Butler, and Arva Lowther worked as nurses in multiple departments for Defendants at various time periods between 2004 and 2015. (ECF Nos. 74-1 ¶¶ 1–5; 74-2 ¶¶ 1–5; 74-3 ¶¶ 1–5.) They were hourly employees who often worked more than 40 hours per week. (ECF Nos. 74-1 ¶ 5; 74-2 ¶ 5; 74-3 ¶ 5.) All three women submitted affidavits stating that patient care employees did not clock in and out for meal breaks, and that the hospital had a policy of regularly deducting 30 minutes from each shift for a meal period, regardless of whether the employees actually received meal breaks. (ECF Nos. 74-1 ¶¶ 6–7; 74-2 ¶¶ 6–7; 74-3 ¶¶ 6–7.) They also stated that they could not recall a single day in the past three years during which they were able to take a 30-minute meal break free from their job duties, and that they were aware of other employees who had the same experience. (ECF Nos. 74-1 ¶¶ 6–9; 74-2 ¶¶ 6–9; 74-3 ¶¶ 6–9.) Finally, Plaintiffs attested that they were reprimanded when they attempted to cancel the automatic lunch deductions;[1] were discouraged from leaving the floor during scheduled meal breaks; and that managers were aware that nurses were required to work or were interrupted during their meal breaks, but did not ensure that nurses were completely relieved of work duties during their uncompensated meal breaks. (ECF Nos. 74-1 ¶¶ 1–5; 74-2 ¶¶ 1–5; 74-3 ¶¶ 1–5.)

Named Plaintiff Arva Lowther confirmed this information in her deposition testimony. (ECF No. 75-1.) Lowther also testified that she spoke with several managers about not having time to take a lunch, yet not getting paid for working through lunch, and also testified that one of her managers, Mandy Riess, told her and other employees not to clock out no lunch. Lowther

---

[1] Plaintiffs refer to cancelling the automatic lunch deduction as "clocking out no lunch."

also testified that she received inadequate training on how to clock out no lunch using the timekeeping system. Finally, Lowther testified that management altered payroll; thus, she was unable to confirm that she was paid for working through lunch even when she did cancel the meal deduction.

Named Plaintiff Carol Butler's deposition testimony closely mirrors Lowther's. (ECF No. 75-2.) Butler also testified that she complained to managers at monthly meetings about not being able to take a lunch, and recalled that on two occasions, she was reprimanded by Reiss after clocking out no lunch.

Finally, opt-in plaintiffs Kim Weckbacker, Melinda Johnson, Joshua Booth, and Mary Clegg submitted affidavits in support of Plaintiffs' motion. (ECF Nos. 74-4; 74-5; 74-6; 74-7.) And opt-in plaintiff Billie Long submitted a letter detailing her employment for Defendants. (ECF No. 74-9.) All of these opt-in plaintiffs confirmed that they worked through their lunches and were not paid. Additionally, all of the opt-in plaintiffs affirmed that they have spoken with fellow employees who are afraid to join the lawsuit, for fear that their employment will be terminated.

2. *Defendants' Policies*

Plaintiffs allege that all of Defendants' written policies governing the use of the auto-deduct timekeeping system "render the entire auto deduct policy facially illegal." (ECF No. 74 at 13.) More specifically, Plaintiffs claim that Defendants' auto-deduct policy violates the FLSA, the Ohio Prompt Pay Act, and Ohio's minimum wage and hour statute (which expressly incorporates the standards and principles of the FLSA). (*Id.* at 3–5.) Even though certain of these policies *appear* legal (e.g., the policy forbidding employees from working off the clock),

Plaintiffs argue that the evidence they submitted confirms that they are not followed in practice. The written policies are as follows:

- 5.1 Scheduling of Lunch periods is the responsibility of the manager. A normal lunch period is 30 minutes.
  . . .

  5.4 Employees are not permitted to work their lunch period without permission of their Department Manager or Supervisor

  > 5.4.1 Employees who are unable to take an uninterrupted lunch break due to work load will be instructed to **cancel** their lunch deduction by their supervisor or may be released from work 30 minutes early.  (Doc. 74, Ex. J.)

According to Plaintiffs, this particular policy is facially illegal because it "places the onus on the employee to maintain records[,] not the employer."  (ECF No. 74 at 13.)  In addition, it "affirmatively provides supervisors an option not to pay employees for hours worked during an unpaid lunch"; it gives Defendants the ability to shorten the employees' workday rather than pay employees for all hours worked.  (*Id.* at 14.)

- 1.1 It is the policy of Memorial Health System that the Department Manager maintain the payroll process for their departments. Each Manager is responsible for approving the final bi-weekly payroll and assuring the payroll is reported according to the following guidelines.
  . . .

  2.1 Employees enter all time through the Time and Attendance System. They should not enter benefit hours in excess of what appeared on their last paystub.
  . . . .

  2.2 Managers are to have all corrections/additions made to their payroll and approved by noon, Monday of Pay week.  (Ex. K.)

Under this policy, managers who have not seen employees working are permitted to alter payroll records without putting the employee on notice.  (Doc. 74 at 17.)  Plaintiffs allege that Defendants *did* alter payroll records when employees attempted to clock out no lunch.  (*Id.*)

4

## B. Procedural History

Plaintiffs commenced this collective and class action against Defendants Marietta Memorial Hospital, Marietta Health Care, Inc., and Selby General Hospital in October 2015. (ECF No. 1.)  They bring causes of action under the FLSA and related Ohio laws. (ECF No. 146). In August 2016, this Court certified conditionally the following class under the FLSA:

> All of Defendants' current and former hourly employees who were responsible for direct patient care and were subject to Defendants' automatic meal deduction policy at any time during the three years prior to the granting of [the motion for conditional certification] to the present.

(ECF No. 42 at 20.)  After this case was conditionally certified as a collective action, Plaintiffs filed a motion for a temporary restraining order, alleging that Defendants "coerced, intimidated and harassed" absent class members and created an "atmosphere of fear" such that class members were afraid to opt in to the lawsuit. (ECF No. 97 at 2).  This Court granted Plaintiffs' motion and granted in part their subsequent motion for a preliminary injunction.  (ECF No. 112.) In granting Plaintiffs' motion for a preliminary injunction, this Court re-opened the opt-in period for the class of nearly 2000 individuals through May 1, 2017, and permitted Plaintiffs to reissue the previously-approved notice to the entire class. (ECF No. 136 at 14.) Defendants were also enjoined and restrained from communicating directly or indirectly with putative class members about the lawsuit, with the injunction to remain in place until the Court issues a ruling on the instant motion.  (*Id.* at 13.)

In September 2017, this Court granted Plaintiffs' Motion for Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. (ECF No. 171). Defendants had earlier filed a Motion for Summary Judgment (ECF No. 164) which was fully briefed before Defendants' Motion was dismissed without prejudice (ECF No. 210) after Defendants filed a Motion indicating that merits discovery was incomplete. (ECF No. 206). Plaintiffs also filed a Motion

which in part opposes Defendants' now-dismissed Motion for Summary Judgment and in part requests Summary Judgment in favor of the Plaintiffs. (ECF No. 176). This Motion, too, is fully briefed and ripe for consideration.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). It is proper to enter summary judgment

against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322 (quoting *Anderson*, 477 U.S. at 250).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

### III. ANALYSIS

#### A. FLSA Liability

Plaintiffs first request summary judgment on the issue of FLSA liability, arguing there is no genuine dispute of material fact that Defendants violated the wage provisions of the FLSA. This motion must be denied because genuine disputes of material fact remain.

Defendants are correct to note that auto-deduction policies, like Defendants had in place, are not *per se* violations of the FLSA. *See e.g., Hamm v. Southern Ohio Medical Center*, 275 F.Supp.3d 863, 876 (S.D. Ohio 2017). However, if an employee is "required to perform any activities that could be characterized as substantial duties" during her meal time, that time is compensable under the FLSA. *Hill v. U.S.*, 751 F.2d 810, 814 (6th Cir. 2984). On the other hand, an employee is not entitled to compensation under the FLSA if she can "pursue…her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit…" *Id*.

7

If an employer chooses to implement an auto-deduction policy, it must remain vigilant that employees are only working the hours for which they are compensated. Such a system does not shift the burden to the employees to ensure accurate record-keeping. It remains

> "the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so."

29 C.F.R. § 785.13. *See also White v. Baptist Memorial Health Corp.*, 699 F.3d 869, 879 (6th Cir. 2012) (Moore, J., dissenting, citing Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, FLSA2007–1NA, at *1 (May 14, 2007) (implementation of automatic pay deduction for lunch breaks "does not violate the FLSA *so long as the employer* accurately records actual hours worked, including any work performed during the lunch period" (emphasis added)); Wage & Hour Div., U.S. Dep't of Labor, Fact Sheet # 53, at *3 (July 2009) ("When choosing to automatically deduct 30–minutes per shift, the employer must ensure that the employees are receiving the full meal break.")).

The record reflects that Plaintiffs had their lunch break automatically deducted from their paycheck even though the testimony reflects that Named and Opt-In Plaintiffs could not remember receiving an uninterrupted lunch break. *See supra*, § I.A.1. This is strong evidence that Defendants' execution of their facially-valid policy was in violation of the FLSA.

However, Plaintiffs must still demonstrate Defendants had the requisite knowledge. The regulations provide that "[w]ork not requested but suffered or permitted is work time…. The reason is immaterial. The employer knows or has reason to believe that [the employee] is continuing to work and the time is working time." 29 C.F.R. § 785.11. Plaintiffs' testimony reflects that more than one employee voiced their concerns about the automatic lunch deduction. *See supra,* §I.A.1. But the record does not conclusively establish who within the Defendants'

organizational structure knew the class members were working through their lunches without cancelling the automatic deduction, and when they gained that knowledge. As a result, there remains a genuine dispute of material fact – namely, the actual or constructive knowledge of Defendants that Plaintiffs were "not requested but suffered or permitted" to work.

Both parties cite to *White* as conclusively answering this question in their favor. Defendants argue *White* bars this case (ECF No. 189 at 4), while Plaintiffs argue this Court has already distinguished *White*. (ECF No. 176 at 1 (citing ECF No. 171 at 12)). In *White*, the Sixth Circuit voted 2-1 to uphold a district court's order granting summary judgment for the employer-defendant. The majority concluded the nurse-plaintiffs had not established the employer's knowledge of the failure to pay for missed meal breaks after automatically deducting that time from employee paychecks.

The Sixth Circuit begins its analysis by noting a "dearth of case law on compensation for missed meal breaks under the FLSA as compared to the case law on unpaid overtime." *White*, 699 F.3d at 873. But, the court reasons, these two types claims can be analogized because they are "analytically similar." *Id*. (quoting *Hertz v. Woodbury County*, 566 F.3d 775, 783 (8th Cir. 2009). The panel then draws conclusions from out-of-circuit cases discussing unpaid overtime, concluding that the same test for employer knowledge could apply in cases of missed meal breaks. Reversing the burden set forth in Department of Labor regulations, the *White* panel concluded that "if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process." *White*, 699 F.3d at 876. The panel was unpersuaded by the nurse-plaintiffs' citations to cases involving, as the court itself says, "situations where the employer prevented the employees from reporting overtime or were otherwise notified of the

employees' unreported work." *Id*. (citing cases). This was not the factual scenario in *White*, according to the panel, because "there is no evidence that Baptist discouraged employees from reporting time worked during meal breaks or that they were otherwise notified that their employees were failing to report time worked during meal breaks." *Id.* at 877. As a result, the court concluded that there was no genuine dispute of material fact and affirmed the district court.

*White* can be distinguished from the instant case. The Sixth Circuit, reviewing the grant of summary judgment, saw "no evidence" that the employer "discouraged employees" from accurately recording when they worked during lunch, and no evidence that the employer generally knew that the nurses were failing to report time worked during lunch despite the automatic meal deduction. By contrast, there is evidence to this effect in the record here. Several Plaintiffs have testified that they brought the issue to the attention of their supervisors, and some also testify they were reprimanded for doing so. *See supra*, §I.A.1. This indicates that there is evidence *both* that Defendants "discouraged employees" *and* that Defendants were "otherwise notified" that Plaintiffs were failing to report time worked. This factually distinguishes *White* from the instant case. As above, the question of when Defendants knew about the apparently systematic failure to cancel the lunch deduction is a disputed question of material fact. As such, Plaintiffs' motion is not barred by *White,* as Defendants argue, but neither is summary judgment appropriate at this time.

### B.  Ohio State Law Claims

Plaintiffs also request summary judgment on their Ohio state law claims. (ECF No. 176 at 35). These Ohio statutes are interpreted in tandem with the Federal FLSA. *See e.g. Douglas v. Argo-Tech Corp.*, 113 F.3d 67, n.2 (interpreting the FLSA and these Ohio laws "in a unitary fashion" because the statutes "parallel[]" each other.). As a result, for the foregoing reasons,

summary judgment is not appropriate at this time because there remain genuine disputes of material fact.

### C. FLSA Record Keeping Violations

Plaintiffs request summary judgment that Defendants are in violation of the FLSA's record-keeping requirements. (ECF No. 176 at 36). Specifically, the FLSA requires that every employer covered by the FLSA shall

> "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders there-under."

29 U.S.C. § 211(c). Nevertheless, the FLSA does not provide for a private right of action to enforce this record-keeping provision. Rather, the [a]uthority to enforce the Act's recordkeeping provisions is vested exclusively in the Secretary of Labor." *Elwell v. University Hospitals Home Care Services*, 276 F.3d 832, 843 (6th Cir. 2002) (citing 29 U.S.C. §§ 215, 217).

Although an employer's failure to keep records as prescribed by § 211(c) cannot be enforced by private action and may not be considered by a jury "for *any* purpose in determining willfulness… an employer's recordkeeping practices may nonetheless corroborate an employee's claims that the employer acted willfully in failing to compensate for overtime." *Elwell*, 276 F.3d at 844 (emphasis in original). A jury hearing evidence about an employer's record-keeping violations and conclude "this evidence would make it more likely that the employer was aware of a substantial risk that its activities violated the FLSA, and acted in conscious disregard of that risk." *Id*. As a result, Plaintiffs may submit evidence about Defendants' alleged record-keeping violations to a jury at a trial to support their argument that Defendants acted willfully, but

Plaintiffs may not maintain a separate cause of action alleging violations of § 211(c). As to this count, summary judgment is denied.

### D.  Defendants' Willfulness

Plaintiffs' final argument is that there is no genuine dispute that Defendants' violations of the FLSA were willful. This question depends in substantial part on the evidence about Defendants' knowledge. As a result, summary judgment is not appropriate at this time. Because a determination of Defendants' willfulness will also affect the determination of damages, this Court will not address the issue of damages at this time. As to this count, summary judgment is denied.

### IV.    CONCLUSION

For the foregoing reasons, there remains a genuine dispute of material fact such that summary judgment would be inappropriate at this time. Plaintiffs' Motion is **DENIED**.

**IT IS SO ORDERED.**

      **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  March 27, 2019**