**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **LYNNETT MYERS**, *et al.*, | : | |
| | : | **Case No. 15-CV-2956** |
| **Plaintiffs,** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | Magistrate Judge Vascura |
| **MEMORIAL HEALTH SYSTEM** | : | |
| **MARIETTA MEMORIAL HOSPITAL,** | : | |
| *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter is before the Court on Plaintiffs' Unopposed Motion for Final Class and Collective Action Settlement Approval (ECF No. 334), Plaintiffs' unopposed Corrected Motion for Attorneys' Fees (ECF No. 332), and the August 23, 2022, Fairness hearing concerning the same. Because the Settlement Agreement between parties (the "Agreement") is fair, reasonable, and adequate in light of the factual, legal, practical, and procedural considerations raised by this suit, the Court **CERTIFIES** the class under the Fair Labor Standards Act, and **APPROVES** the proposed settlement, **DISMISSING** the FLSA and state-law wage claims in this action. The Court also **AWARDS** Plaintiffs' attorney fees amounting to **$750,000**, **30%** of the total settlement amount; litigation expenses and costs of **$174,613.87**; administrative costs of **$25,000**; and class representative awards totaling **$45,000**.

## I.   BACKGROUND

### A.  Litigation

Plaintiffs Lynnett Myers, Carol Butler, and Arva Lowther, on behalf of themselves and all other persons similarly situated, initiated this lawsuit by filing a collective and class action

complaint with the Court on October 29, 2015. (ECF No. 1.) Plaintiffs alleged that Defendant Memorial Area Healthcare d/b/a Memorial Health System ("Marietta") engaged in employment practices that violated the Fair Labor Standards Act ("FLSA"), 20 U.S.C. § 201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code § 4111.01, *et seq.* Plaintiff requested opt-in class certification for FLSA violations under § 216(b) of the FLSA, and Federal Rule of Civil Procedure 23 opt-out class certification for violations of their Ohio-law claim. (*See id.* ¶¶ 28, 35).

On May 20, 2016, Plaintiffs filed their first Amended Complaint, adding claims for unjust enrichment on behalf of the entire Rule 23 class and violations of Ohio's Prompt Pay Act (O.R.C. § 4113.15(A)) on behalf of an Ohio subclass. (ECF No. 33). The Amended pleading also added Defendants Marietta Memorial Hospital, and Selby General Hospital. (*Id.* at 1–2). The Court conditionally certified the collective action under FLSA on August 17, 2016. (ECF No. 42). On May 01, 2017, Plaintiffs filed their Second Amended Complaint to fix a typographical error in the name of one of the Defendants. (ECF No. 146). The Court subsequently certified the Rule 23 Class on September 11, 2017. (ECF No. 171). On April 13, 2018, Plaintiffs filed the operative Third Amended Complaint, solely to add two individual Defendants who worked for Memorial Health System: J. Scott Cantley, the Chief Executive Officer, and Eric Young, the Vice President and Chief Financial Officer. (ECF No. 216.) And on September 10, 2018, this Court granted Plaintiffs' Motion to Amend Class Definition. (ECF No. 239).

The parties participated in a Settlement Conference before the Court on September 2, 2021. (*See* ECF No. 297). Though the parties were unable to achieve a settlement then, they did so three weeks later. (*See* ECF 316).

**B. Settlement Agreement**

The Agreement seeks to resolve all FLSA and state-law wage claims in the suit. Under the Agreement, the parties agree to settle the case for $2,500,000.00, which includes deductions for attorney fees amounting to $750,000.00 (30% of the settlement amount), litigation expenses and costs of $174,613.87, $25,000 in administration costs, and class representative awards totaling $45,000, leaving a maximum net settlement fund of approximately $1,505,386 divided among 2,585 eligible participants. (ECF No. 325-1 at 9, 11); (ECF No. 334-2 at 6).  Individual allocation was based on a multi-step damages analysis.

First, Plaintiffs used Defendant's timesheet data to determine the number of eligible shifts worked by Class and Collective members stemming from Defendants' compensation system under the FLSA and any applicable state law. Next, based on that analysis, Plaintiffs sought to reimburse class members by paying them a fixed amount for each shift that they: (i) worked during their meal break; (ii) were subjected to an automatic meal deduction; and (iii) did not cancel their meal deduction.  The amount per such applicable shift is $1.19. Upon making a claim, Plaintiffs verify the applicable number of shifts and pay each claimant the per applicable shift amount.[1]

Under the Agreement, any unused or unclaimed funds will be reallocated as follows:

i.      If after allocating the funds in the QSF [Qualified Settlement Fund] to make payments … there are funds remaining in the QSF, the Claims Administrator shall pay the balance of the QSF to Class Counsel as a full or partial payment of any attorney's fees awarded by the Court. Any remaining funds shall be returned to Defendants.

ii.     Within 365 days of Effective Date, Defendants shall deposit into the QSF Account … the full award attorneys' fees to Class Counsel as described in Section 3.2 to the extent Class Counsel have not already received full payment….

---

[1] Those within the Collective Action do not need to make claims. Once they have opted-in, their recovery amount is calculated and sent to them without any additional action needed.

(*Id.* at 10–11).  As it stands, if the FLSA opt-in Plaintiffs recover at the same average rate as the Rule 23 class members (around $681 per claimant), approximately $1.24 million of the $2.5 million will revert to Defendant.[2]

### C.  Claims Process

Consistent with the Court's Amended Preliminary Approval Order (ECF No. 330), Class Counsel mailed both the Hybrid and FLSA Notices of Settlement on May 6, 2022. (ECF No. 334-2 at 2).  The Notices—which includes a post-card and packet of information—provided potential Settlement Class Members information about the terms of the settlement, and informed them about the allocation of attorney fees, and explained their right to object or exclude themselves from settlement. (*Id.* at 6). The Notices also provided potential members information regarding the date, time, and place of the Fairness hearing. (*Id.*) (showing a sample of the Notices which provided a link to the administrator website further detailing the location of the Fairness hearing).

Over the 90-day claims period, the Claims Administrator performed skip traces for alternative addresses, and re-mailed Notices of Settlement to any potential Settlement Class Member whose Notice was returned as undeliverable. (*Id.* at 2).  Of the 209 undelivered Notices, the Claims Administrator traced 183 notices and the Post Office provided new addresses for 26. Of those Notices, the Claims Administrator re-mailed 196 and the Post Office forwarded 11.  (*Id.*). As of August 23, 2022, 20 were ultimately deemed undeliverable.  (*Id.*).

At the close of the claim period, 146 opted in to the FLSA Collective. (*See* ECF No. 159 at 1).  Of the 2,585 eligible Rule 23 Settlement Class Members, no one requested exclusion from the Settlement (100% class inclusion). (ECF No. 334 at 3, 16.)  Class Counsel have received no objections to the proposed Agreement. (*Id.*).

---

[2] Plaintiffs' counsel represented that the average amount paid to opt-in Plaintiffs would, in fact, be higher and would result in a lower amount retained by the Defendant.  This estimate was unavailable at the time of the hearing.

## II.    ANALYSIS

### A.  Final Certification and Final Approval

The Court has already certified the Rule 23 Settlement Class (*See* ECF No. 171), and conditionally certified the FLSA Collective (*See* ECF No. 42).  The Court finds that nothing has changed with regard to the appropriateness of class certification under Rule 23 or the approval of Class Counsel.

As to FLSA certification, the Court's role in approving a settlement of a FLSA collective action "is comparable to that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23." *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012) (citing *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010)).  Because the purpose of the FLSA is to ensure that covered employees receive a "fair day's pay for a fair day's work," *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981), its "provisions are mandatory and … generally not subject to bargaining, waiver, or modification by contract or settlement," but an exception to this general rule applies when a court reviews and approves a settlement in a private action under 29 U.S.C. § 216(b) for unpaid minimum wages or, as here, unpaid overtime compensation. *Dillworth*, 2010 WL 776933, at *5 (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 713 (1945), 29 U.S.C. § 216(b), and *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). The Court's task in approving such a settlement is to ensure that there is a "bona fide dispute between the parties as to the employer's liability under the FLSA, lest the parties be allowed to negotiate around the FLSA's requirements concerning wages and overtime." *Kritzer*, 2012 WL 1945144, at *5.

5

The Court finds that the Agreement resolves a bona fide dispute under the FLSA. Plaintiff alleges that Defendants violated the FLSA by failing to pay fully for work performed, including proper overtime wages. (Third Am. Compl., ECF No. 216, ¶¶ 1–2, 35).  Specifically, Plaintiffs aver that they were non-exempt employees of Defendants who were responsible for direct patient care, including nurses, nursing assistants, patient care assistants, and patient care associates. (*Id.* ¶¶ 3–4, 31, 34).  Defendants had a policy that required Plaintiffs to clock in at the beginning of their shift and clock out at the end.  (*Id.* ¶ 32).  Plaintiffs were not required, however, to clock out for their 30-minute meal breaks.  (*Id.*).  Instead, Defendants would simply deduct 30 minutes per shift to account for such breaks.  (*Id.* ¶¶ 30, 31).  This policy became problematic when Defendants would require Plaintiffs to return to work during their unpaid meal breaks, resulting in the underpaying of Plaintiffs. (*Id.* ¶ 30, 31).  Plaintiffs allege that Defendants knew that Plaintiffs were owed back wages, because Defendants kept records of class members' hours, and even if those records were inaccurate or incomplete, the burden of proof shifts to Defendants after Plaintiffs establish the hours worked through other sources of evidence.  (*See id.* ¶¶ 40, 61–62, 77).

Additionally, the parties have litigated this case for the better part of seven years which has included briefing on dispositive motions, class certification, and *Daubert*.  The parties also point to the Settlement Conference mediated by the Court as additional evidence that this agreement was negotiated at arm's length and absent collusion.

### B.  Sufficiency of Notice

In class actions certified under Rule 23(b)(3) (*See* ECF No. 171 at 14), notice of settlement must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e).  *See* Fed. R. Civ. P. 23(c)(2)(B), (e).  Rule 23(e) specifies that no class action may be settled, dismissed, or compromised without court approval, preceded by notice to class members. Fed. R. Civ. P.

23(e).  Rule 23(c)(2)(B) requires that notice to the class be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 629–30 (6th Cir. 2007) (hereinafter *UAW*) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, the Settlement Notice "'fairly apprise[d] the prospective members of the class of the terms of the proposed settlement' so that class members [could] come to their own conclusions about whether the settlement serves their interests." *Id.* at 630 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)). The Notice "explained its purpose, discussed the nature of the pending suit and proposed class and accurately summarized the … settlement agreement." *Id.*  At the Fairness hearing, Class Counsel averred that approximately 20 of the 2,585 eligible class members were not notified—representing a notice rate of approximately 99.2%.  The Court finds that the Notice was sufficient.

### C.  Whether Fair, Adequate, and Reasonable

Before approving a settlement agreement, the Court must determine if the settlement is "fair, adequate, and reasonable, as well as consistent with the public interest." *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990) (citing *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986) and *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).  In determining whether the proposed settlement is fair, reasonable and adequate, the Court considers several factors:

      (1)     the risk of fraud or collusion;
      (2)     the complexity, expense and likely duration of the litigation;
      (3)     the amount of discovery engaged in by the parties;
      (4)     the likelihood of success on the merits;
      (5)     the opinions of class counsel and class representatives;
      (6)     the reaction of absent class members; and
      (7)     the public interest.

*UAW*, 497 F.3d at 631. In reviewing a proposed class action settlement, the district court has "'wide discretion in assessing the weight and applicability' of the relevant factors." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205–06 (6th Cir. 1992)).

The court may limit the fairness hearing "to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Tenn. Ass'n of HMOs, Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001) (citations omitted). A court should not, at the fairness hearing, "determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties." *Vukovich*, 720 F.2d at 921; *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 904 (S.D. Ohio 2001). However, a court "cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). "Parties to the settlement must proffer sufficient evidence to allow the district court to review the terms and legitimacy of the settlement." *Id.* at 635.

Here, the Court finds that the proposed settlement is fair, adequate, and reasonable. All seven factors militate in favor of approval of the Agreement.

First, the Agreement is not the result of fraud or collusion. Plaintiffs have been represented by competent and zealous counsel since filing suit. Matthew Wilson, Lance Chapin, and Steven Babin of Meyer Wilson Co. LPA, Chapin Legal Group, LLC, and Babin Law, LLC, respectively,

are experienced, wage-and-hour attorneys that initiated this litigation against Defendants over a few contested issues, which soon burgeoned in scope and complexity through the course of litigation. *See Lynn's Food Stores*, 679 F.2d at 1354 (holding that approval of a settlement is appropriate where "initiation of the action by the employees provide some assurance of an adversarial context"). And the Agreement is the result of arm's-length mediation overseen initially by the Court.

The second and third factors also weigh in favor of approving the Agreement. Defendants have culled and furnished voluminous timesheets and other data to Plaintiffs during discovery, which gave parties a better handle on the strengths and weaknesses of their respective cases. Parties aver that, absent settlement, continued litigation may have resulted in a trial and even an appeal. Although discovery was largely limited to data, which required significant expert work rather than legal skill, the Court appreciates the time and effort required to reach this result. The Court also acknowledges that securing relief now eliminates the uncertainty of recovery from a Defendant experiencing financial distress.[3]

The fourth factor also weighs in favor of approving the Agreement. Although Defendant denies wrongdoing, and although Plaintiffs are confident of their chances at trial, Plaintiffs are aware of the risk inherent in all litigation and, by agreeing to the Settlement, have determined that recovery under its terms is preferable to taking their chances at trial and the possibility that Defendants may be unable to pay at that point.

As to the fifth factor, Class Counsel is experienced and knowledgeable, having "handled many similar cases in this court and in courts throughout the country," and they "agree that the

---

[3] Plaintiffs' counsel repeatedly observed—in their briefing and during the Fairness hearing—that the uncertainty of recovery was exacerbated by the Defendants' uncertain financial condition. In addition to experiencing a cyber-attack, the business suffered throughout the ongoing COVID-19 Pandemic.

Settlement is both a strong settlement on its own terms and in the best interests of FLSA Collective Action and Class Action Members."   (ECF No. 334 at 14–15) (citing ECF Nos. 331-2 ¶ 3, Decl. of Lance Chapin; 331-3 ¶¶ 2–3, Decl. of Steven Babin; 332-2 ¶¶ 2–6, Decl. of Matthew R. Wilson). The Court has no reason to question these sworn statements.

The reaction of potential class members also supports approval. Three-hundred and eighty-one accepted their offers, and not one of the more than 2,500 eligible Rule 23 members requested exclusion from settlement.  Significantly, not one person has objected to its terms, either in writing or at the Fairness hearing.

The public policy generally supports settlement of class-action lawsuits.  *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (citation omitted). Here, the Agreement provides class members immediate relief, avoids further litigation, and frees the Court's judicial resources.

Finally, the Court has a responsibility "to ensure that the distribution of the settlement proceeds is equitable." *Dillworth*, 2010 WL 776933, at *6 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). Here, the distribution is fair and equitable because Class Members will receive payouts directly related to the amount of time they worked for Defendants and how much actual unpaid overtime or off-the-clock time they incurred.

### D.  Attorney Fees

The FLSA's attorney fees provision seeks to ensure "effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (internal quotation marks omitted). In calculating the fee award, the Court should not put undue emphasis on the amount of the plaintiffs' recovery because an attorney fee award in a FLSA case "encourage[s] the vindication of congressionally identified policies and rights." *Id.* at 1134–35 (internal quotation marks omitted) (alteration in

original). The Court has the discretion to use either the lodestar method or a percentage of the common fund to award attorney fees. *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516–17 (6th Cir. 1993). Regardless of how the award is calculated, the final amount must be reasonable. *Id.* at 516.

As a threshold matter, the Plaintiffs contend—and the Defendants do not object—that the appropriate method is the percentage of the fund approach with a cross-check to the lodestar. (ECF No. 332-1 at 6) (citing *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, No. 1:16-CV-448, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017)) (discussing the percentage of the fund method with reference to the lodestar with approval). The Court will adopt that method.

To evaluate whether the amount of an award is reasonable, courts consider: "(1) the value of the benefit rendered for the class, (2) society's stake in rewarding attorneys who produce such benefits, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of the attorneys involved." *Kritzer*, 2012 WL 1945144, at *9 (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

The Court finds that all factors militate in favor of granting the award of attorney fees.

First, each Class Member will receive an amount of compensation proportional to the number of shifts they worked and were not fully compensated. The process afforded by the Agreement allows for a much smoother recovery for the aggrieved than the alternative. As Plaintiffs observe given the uncertain financial status of Defendants, it is possible that Plaintiffs could have prevailed at trial and faced the riskier proposition of attempting to collect from Defendants who might otherwise be unable to pay.

11

Second, society's stake in awarding attorneys who bring these wage-violation cases supports an award of attorney fees. Class Counsel recovered overtime damages for 381 of Defendants' current or former employees. Without this lawsuit, many of them would not have known what they were owed and, even if they did, would not have found it practicable or in their best interest to vindicate their rights. *See Kritzer*, 2012 WL 1945144 at *9 ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own.")

Third, Class Counsel took this case on contingency, devoting almost 4,000 hours to the matter leading up to settlement. (ECF No. 332-1 at 9). Class Counsel have not been compensated for any time or expense since the beginning of this litigation, which weighs in favor of granting an award of attorney fees. *See Gentrup*, 2011 WL 2532922 at *4 (finding that plaintiffs' counsel making "significant investments of time" without compensation weighed in favor of granting attorney fees).

Performing a cross-check of the attorney fee request using Class Counsel's lodestar is optional, but it also weighs heavily in favor of granting fees. Class Counsel request an amount $1,033,933 less than their lodestar. Awards of common-fund attorney fees in amounts two to three-times *greater* than the lodestar have been found reasonable. *See Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-cv-1061, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013); *Swigart*, 2014 WL 3447947, at *6 (approving multiplier of 2.57 in a FLSA case); *Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving multiplier of 3.06 in an Employee Retirement Income Security Act case).

As to the fifth factor, this is a relatively complex case which was exacerbated by the structure of the Agreement. In addition to litigating for over six years, Class Counsel structured a

settlement that appropriately secured recovery for their clients, accounts for the uncertain financial condition of Defendants, and represents a global settlement of all wage claims under state law and the FLSA. This weighs in favor of approval.

Regarding the sixth factor, Class Counsel were highly skilled. Lead Class Counsel have amassed vast experience in federal courts pursuing class and collective-action litigation, (ECF Nos. 332-2 ¶¶ 2-7; 331-2 ¶¶ 3–4; 331-3 ¶¶ 2–4). Similarly, defense counsel specializes in defense-side labor and employment cases nationwide, with 6 offices throughout the United States. (*See* ECF No. 332-1 at 14); (*See also* www.icemiller.com (last seen Aug. 13, 2022)).

In consideration of the *Ramey* factors, the Court will award **30% of the fund**, for a total of **$750,000**, which represents a lodestar multiplier of 0.42. This is significantly less than other lodestar multipliers approved for class actions in this Circuit. *See e.g., Lowther v. AK Steel Corp.*, No. 1:11-CV-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (multiplier of 3.06); *Bailey v. AK Steel Corp.*, No. 1:06-CV-468, 2008 WL 553764, at *3 (S.D. Ohio Feb. 28, 2008) (3.04); and *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (Marbley, J.) (5.9).

### E. Out-of-pocket Expenses and Administration Costs

The Agreement provides that Class Counsel may seek approval of reasonable out-of-pocket litigation expenses and costs, along with reimbursement for the costs associated with administering the Settlement. (ECF No. 332-1 at 16) (citing (ECF No. 325-1)).

The Court awards Class Counsel's $174,613.87 request for out-of-pocket costs incurred in litigation because those costs were necessary to litigate this case. This included costs for expert witnesses, court filing fees, legal research, mediation, photocopies, postage, process service, deposition expenses, and travel expenses. (*Id.* at 13). *See In re Packaged Ice Antitrust Litig.*, 2012

WL 5493613, at *8 (E.D. Mich Nov. 13, 2012) (approving costs to plaintiffs' counsel for travel, telephone, printing, Westlaw, and other necessary costs).

The Court further awards Class Counsel's $25,000 request for reimbursement of funds associated with settlement administration. The Claims Administrator has handled the Notice process, which included (or will include) preparing and mailing the Notices, searching for alternative addresses for all mail returned as undeliverable, mailing settlement award checks to class members, among other services. Based on the averments of counsel, $25,000 is an entirely reasonable amount to reimburse for all the effort and resources needed to administer the settlement.

### F. Class Representative Service Awards

Finally, the Court approves the $45,000 to be paid equally to the three Named Plaintiffs: $15,000 each to Lynnett Myers, Carol Butler, and Arva Lowther. The Notice to potential class members indicated this proposed award, and there were no objections. Defendants likewise do not object to the requested award.

Providing class representative service awards is "[an] efficacious way[] of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Though the Sixth Circuit has not spoken directly on the propriety of incentive awards as a general matter, it has only ever rejected an incentive award when there was no common settlement fund. *Id.* Accordingly, a district court's award of such an incentive award is *not* impermissible, and reviewed only for abuse of discretion. *Id.* Plaintiffs request $15,000 for each class representative because they "were extensively involved in this case during its entire, lengthy duration—providing key information, testimony, being deposed, and attending mediation." (ECF No. 332-1 at 4). Plaintiffs also assert

that "this is an unusual level of involvement for class representatives, and warrants the incentive award." (*Id.*).

Comprising 1.8% of the global settlement fund, the amount does not significantly reduce the award to other class members, so there is no concern that awarding named class representatives will be detrimental to class members.

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Unopposed Motion for Settlement Approval finding the settlement fair, adequate and reasonable.  The Court **AWARDS** Plaintiffs' attorney fees amounting to **$750,000**, litigation expenses and costs of **$174,613.87**, administration costs of **$25,000**, and class representative awards totaling **$45,000**.  The difference between the requested amount in attorney fees ($833,333.33)[4] and the amount awarded ($750,000)—**$83,333.33**—will revert to Plaintiffs and will be paid on an applicable shift basis. Notwithstanding the order of payment set forth in the Settlement Agreement, FLSA Collective and Rule 23 Class members will be paid first.  This case is **DISMISSED** and this Court will retain jurisdiction to enforce the Settlement Agreement.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  September 6, 2022**

---

[4] During the Fairness hearing, Plaintiffs' Counsel represented that the amount requested in their Motion was a scrivener's error and too high.  Thus, Counsel reduced their request for attorney fees from $875,000 to $833,333.33, or a third of the total settlement amount of $2,500,000. In all cases, this was consistent with their Notice because there, Counsel represented that *up to* $875,000 would be requested.